WENDELL CORPORATION TRUSTEE *v.*
MARISA I. THURSTON ET AL.
(15367)

Callahan, Borden, Berdon, Norcott and Palmer, Js.

Argued June 4—officially released August 20, 1996

110

*Karl Fleischmann*, with whom was *Elizabeth B. Leete*, for the appellant (plaintiff).

*Richard E. Hayber*, for the appellee (named defendant).

*Andrew Brand*, with whom was *Eileen Duggan*, for the appellees (defendant Martin Gottesdiener and Company et al.).

BORDEN, J. The plaintiff appeals[1] from the judgment of the trial court, rendered after a court trial, rejecting the plaintiff's claim for the imposition of a constructive trust on certain property owned by one of the defendants and subject to a mortgage in favor of the other defendant. The case was tried pursuant to a three count amended complaint. In the first count, the plaintiff, Wendell Corporation Trustee (Wendell), sought foreclosure of a mortgage from the defendant trustee Martin Gottesdiener (trustee), on property located in Meriden that secured a promissory note executed by the trustee. The second count, alternatively, was against the trustee seeking payment of the promissory note. The third count was against the named defendant Marisa I. Thurston and the defendant Martin Gottesdiener and Company (Gottesdiener and Company), for a constructive trust on certain property located in West Springfield, Massachusetts, and for subordination of a mortgage on that property held by Gottesdiener and Company. At the commencement of trial, Wendell withdrew the first

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

count, namely, for foreclosure of the mortgage on the Meriden property, and proceeded only on the other two counts.

The trial court, on the second count, rendered judgment against the trustee on the promissory note in the amount of $774,715.72. On the remaining count, under which Wendell sought a constructive trust on the Massachusetts property owned by Thurston and subordination of the mortgage held by Gottesdiener and Company, the trial court rendered judgment for Thurston and Gottesdiener and Company.

On appeal, Wendell claims that the trial court misapplied the law of constructive trusts, and that the applicable law requires the conclusions that: (1) Thurston holds the property in constructive trust for the benefit of Wendell; and (2) the mortgage of Gottesdiener and Company is subordinated to Wendell's constructive trust. We agree and, accordingly, we reverse the judgment.

The following facts are undisputed. Martin Gottesdiener is an accountant doing business as Gottesdiener and Company.[2] He is also a trustee of the Marisa I. Thurston Trust (trust), of which Thurston is the beneficiary. In 1990, the trustee executed on behalf of the trust, a promissory note in the amount of $509,049, to Meadow Haven, Inc., and secured that note by a mortgage on property located in Meriden that was owned by the trust. On March 9, 1990, Wendell purchased the note and mortgage from Meadow Haven, Inc., for $400,000, and, in connection with that transaction, Carabetta Enterprises, Inc., guaranteed the note. The trustee paid the interest on the note through August, 1990, and

---

[2] From this finding of the trial court, we presume that "Gottesdiener and Company" is merely a trade or professional name for Martin Gottesdiener, the individual. Nonetheless, because the trial court and parties have referred to the individual by the professional name, we do so as well.

Carabetta Enterprises, Inc., paid the interest on the note through August, 1991. Since that date, however, no payments have been made on the note, and the note is in default. As of the date of the commencement of the trial, the amount of principal and interest due on the note was $748,585.[3]

On November 1, 1990, the trustee, in accordance with his power to distribute trust principal to the beneficiary, transferred to Thurston, without consideration, several parcels of real estate, including a parcel located at 855 Riverdale Road in West Springfield, Massachusetts. The transfer left the trust with assets of approximately $100. At the time of the transfer, Thurston gave Gottesdiener and Company a note in the amount of $230,275, secured by a mortgage on the Massachusetts property. The principal of the note was for past accounting services rendered by Gottesdiener and Company to the trust and to various business entities in which Thurston was a stockholder. In addition, the mortgage also secured any obligation for accounting services rendered in the future by Gottesdiener and Company to those business entities.

Wendell sought to have the trial court (1) impose a constructive trust in its favor on the Massachusetts property,[4] and (2) subordinate Gottesdiener and Company's mortgage on that property to that constructive trust. The trial court declined to impose a constructive trust, reasoning in part[5] that Wendell had not proven a pecuniary loss because it had not offered evidence that

---

[3] Neither the amount of the debt nor the liability of the trustee on the note is challenged in this appeal.

[4] Thurston conceded that if Wendell established that it is entitled to a constructive trust, the constructive trust could be applied to any of the former assets of the trust.

[5] The trial court also found that Wendell had not proved that the transfer from the trustee to Thurston was made with the actual intent to defraud creditors, and Wendell does not challenge that finding on appeal.

the equity in the Meriden property that secured the note was insufficient to satisfy the debt. Accordingly, the trial court did not reach the question of subordination of Gottesdiener and Company's mortgage, and rendered judgment for Thurston and Gottesdiener and Company. Thereafter, Wendell moved to open the judgment to offer evidence regarding the value of the Meriden property. The trial court denied the motion, and this appeal followed.

I

Wendell claims that, on the basis of the undisputed facts, a constructive trust in its favor must be imposed on the Massachusetts property, as a matter of law, and that the mortgage of Gottesdiener and Company on that property must be subordinated to the constructive trust.[6] We agree.

Our general standards governing the imposition of a constructive trust are well established. "[A] constructive trust arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy. 76 Am. Jur. 2d, Trusts, § 221, p. 446; see *Van Auken* v. *Tyrrell*, 130 Conn. 289, 291–92, 33 A.2d 339 [1943]. . . . *Zack* v. *Guzauskas*, 171 Conn. 98, 103, 368 A.2d 193 (1976); see also *Brown* v. *Brown*, 190 Conn. 345, 349, 460 A.2d 1287 (1983) (constructive trust based upon unjust enrichment)." (Internal quotation marks omitted.)

---

[6] Wendell also claims that the trial court improperly denied its motion to open the judgment in order to offer evidence of the value of the Meriden property. In light of our conclusion that a constructive trust must be imposed, we need not consider this claim.

*Aetna Life & Casualty Co.* v. *Union Trust Co.*, 230 Conn. 779, 791, 646 A.2d 799 (1994). Moreover, the party sought to be held liable for a constructive trust must have engaged in conduct that wrongfully harmed the plaintiff. Id.

Although we have not specifically determined our scope of appellate review of a trial court's determination of whether to impose a constructive trust, we have determined that scope in the closely related context of unjust enrichment. In that context, we have held that the trial court's determination must stand unless it is clearly erroneous or involves an abuse of discretion. *Hartford Whalers Hockey Club* v. *Uniroyal Goodrich Tire Co.*, 231 Conn. 276, 283, 649 A.2d 518 (1994). "This limited scope of review is consistent with the general proposition that equitable determinations that depend on the balancing of many factors are committed to the sound discretion of the trial court." Id. Considering the similarities between the equitable doctrine of unjust enrichment and the equitable remedy of constructive trust, we conclude that the same deferential scope of review applies to a trial court's determination of whether to impose a constructive trust.

Applying that limited scope of review, we conclude, nonetheless, that the trial court abused its discretion in declining to impose a constructive trust. Two lines of authority, applied to these particular facts, persuade us to reach that conclusion.

The first line of authority emanates from the Restatement (Second) of Trusts, and from respected treatises. Section 279 of the Restatement (Second) of Trusts (1959), provides: "If a creditor is entitled by a proceeding in equity to reach trust property and apply it to the satisfaction of his claim, and the trustee conveys the trust property to the beneficiary before the claim has been paid, the creditor can by a proceeding in equity

hold the beneficiary personally liable for the claim to the extent of the value of the trust property so conveyed, unless the beneficiary is a bona fide purchaser or has so changed his position that it is inequitable to hold him personally liable."

Professors Scott, Fratcher and Bogert take the same view. "The beneficiaries of a trust may be personally liable to a third person to whom an obligation is incurred by the trustee in the administration of the trust, if the third person was entitled to satisfaction of his claim out of the trust estate and the trust estate was distributed among the beneficiaries before the claim was paid. In such a case a beneficiary is not liable beyond the value of the property that he has received, and he is not liable if he is in the position of a bona fide purchaser or has so changed his position that it would be inequitable to compel him to make the payment." 3A A. Scott, Trusts (4th Ed. Fratcher 1988) § 279, p. 532. "The view has been expressed that if a trustee has properly incurred a contract liability, and thereafter distributes trust property to a beneficiary, and the creditor is unable to collect from the trustee, he may sue the beneficiary in equity and recover from him to the extent of the distribution which he has received, unless the beneficiary was a bona fide purchaser of the distribution or has so changed his position after the distribution as to make it inequitable to enforce liability against him." G. Bogert & G. Bogert, Trusts and Trustees (2d Ed. Rev. 1982) § 721, p. 341.

It is true, as Thurston argues, that we have never specifically adopted these statements as authoritative. It is also true, however, that these authorities state principles that are consistent with established Connecticut law. In the area of fraudulent conveyances, we have held that "[t]he party seeking to set aside a conveyance as fraudulent bears the burden of proving either: (1) *that the conveyance was made without substantial*

*consideration and rendered the transferor unable to meet his obligations*; or (2) that the conveyance was made with a fraudulent intent in which the grantee participated. *Bizzoco* v. *Chinitz*, 193 Conn. 304, 312, 476 A.2d 572 (1984); *Zapolsky* v. *Sacks*, 191 Conn. 194, 200, 464 A.2d 30 (1983). The party seeking to set aside the conveyance need not satisfy both alternatives. *Bizzoco* v. *Chinitz*, [supra, 312].'' (Emphasis added.) *Tyers* v. *Coma*, 214 Conn. 8, 11, 570 A.2d 186 (1990); see also *Virginia Corp.* v. *Galanis*, 223 Conn. 436, 443–44 n.10, 613 A.2d 274 (1992). General Statutes § 52-552f, which is part of the Uniform Fraudulent Transfer Act; General Statutes §§ 52-552a through 52-552*l*; expresses the same principle.[7]

The second line of authority emanates from our own case law. Our cases establish the principle that, in real estate mortgage law, ''the plaintiff is entitled to pursue its remedy at law on the notes, or to pursue its remedy in equity upon the mortgage, or to pursue both. A note and a mortgage given to secure it are separate instruments, executed for different purposes and in this [s]tate action for foreclosure of the mortgage and upon the note are regarded and treated, in practice, as separate and distinct causes of action, although both may be pursued in a foreclosure suit. *Mechanics Bank* v. *Johnson*, 104 Conn. 696, 701, 134 Atl. 231 [1926]; *German* v. *Gallo*, 100 Conn. . . . [708], 711, 124 Atl. 837

---

[7] General Statutes § 52-552f provides: ''Transfers fraudulent as to present creditors. (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

''(b) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time and the insider had reasonable cause to believe that the debtor was insolvent.''

[1924]; *Staples* v. *Hendrick*, 89 Conn. 100, 93 Atl. 5 [1915]. *Atlas Realty Corporation* v. *House*, 120 Conn. 661, 670, 183 A. 9 [1936]; *New Haven Savings Bank* v. *Warner*, 128 Conn. 662, 666, 25 A.2d 50 [1942]. If, by an action solely on the note, the owner secures full payment on the debt, his right to enforce the mortgage is gone, or, if he secures payment in part, he can enforce the mortgage only to secure the payment of the balance. *New Haven Savings Bank* v. *Warner*, supra [466]. Where such a procedure is followed, the extent of the recovery, however, should not in any event exceed the amount of the debt. [Id.] *Little* v. *United Investors Corporation*, 157 Conn. 44, 48, 245 A.2d 567 (1968)." (Internal quotation marks omitted.) *Hartford National Bank & Trust Co.* v. *Kotkin*, 185 Conn. 579, 581–82, 441 A.2d 593 (1981). Under this line of authority, therefore, Wendell was not barred by the availability of foreclosure of the mortgage on the Meriden property from seeking payment of the underlying debt by proceeding on the note secured by that mortgage. Similarly, Wendell should not be barred by that same availability from seeking the imposition of a constructive trust in order to seek payment of the same underlying debt.

As Wendell acknowledged in oral argument in this court, however, application of the *Kotkin* line of authority to the present case constitutes an extension of that authority. Whereas, under *Kotkin*, the mortgagee may either bring an action against the obligor on the note, or foreclose against the owner of the property subject to the mortgage, or both, in this case, Wendell seeks a different remedy, namely, the imposition of a constructive trust against a different obligor, namely, the beneficiary of the trust, who is neither liable on the note nor is the owner of the property subject to the mortgage.[8]

---

[8] The record does not reflect whether Thurston owns the Meriden property as a result of the distribution of the capital assets of the trust. Our analysis, however, does not turn on whether she owns that property.

We conclude, nonetheless, that the extension of *Kotkin* to this case is appropriate.

Although the language of *Kotkin* suggests a separation of legal and equitable doctrines; see id., 581 ("the plaintiff is entitled to pursue its remedy at law on the notes, or to pursue its remedy in equity upon the mortgage, or to pursue both"); the ensuing discussion in that case makes clear that the doctrine permitting both remedies, or a combination thereof, is grounded in equitable principles permitting procedural flexibility while at the same time prohibiting double recovery. See id., 581–82 (if owner secures full payment by action on note, no further right to enforce mortgage; if owner secures payment in part, owner can enforce mortgage only for balance; extent of recovery in any event not to exceed amount of debt).

Thus, permitting the *Kotkin* doctrine to operate so as to impose a constructive trust on Thurston is consistent with the equitable principles underlying the doctrine. This extension of the *Kotkin* rule is consistent with procedural flexibility and, as we point out later in this opinion, on remand the trial court will retain sufficient discretion in the enforcement of the constructive trust to avoid double recovery, and appropriately to take into account the availability of payment from the Meriden property, if any.

Having articulated the two lines of authority that, we conclude, would permit the imposition of a constructive trust in this case, it remains for us to apply those authorities to the facts of this case. The authorities articulated in the Restatement (Second) of Trusts, and the treatises by Professors Scott, Fratcher and Bogert, are phrased in permissive, rather than mandatory, terms.[9] That is,

---

[9] For example: "the creditor can by a proceeding in equity hold the beneficiary personally liable"; 2 Restatement (Second), supra, Trusts, § 279; the "beneficiaries of a trust may be personally liable to a third person"; 3A A.

whether a constructive trust should be imposed under those authorities depends on a consideration of all of the facts of the case.

The facts persuade us that, as a matter of law, both lines of authority should be applied to require the imposition of a constructive trust on the Massachusetts property. The underlying debt, which Wendell seeks to satisfy, was incurred on behalf of the trust of which Thurston was the beneficiary. Therefore, we can presume that the trustee borrowed the money, he applied it on behalf of the trust and that, therefore, Thurston benefited from it. Having enjoyed the benefit of the funds that the trustee borrowed, and having received a distribution without consideration from the trustee that left the trust effectively without funds, it is only fair that Thurston's ownership of an asset so distributed not be shielded from satisfaction of the debt that produced those funds in the first place. Moreover, there is no evidence that Thurston changed her position subsequent to the distribution to her, so as to preclude the imposition of a constructive trust. In effect, Thurston should not be permitted to reap the benefits of the trustee's actions without also shouldering a fair proportion of the burdens.[10] Furthermore, as we stated pre-

---

Scott, supra, § 279, p. 532; and the creditor "may sue the beneficiary in equity." G. Bogert & G. Bogert, supra, § 721, p. 341.

[10] In this connection, we are not persuaded by the trustee's and Thurston's reliance on *Aetna Life & Casualty Co.* v. *Union Trust Co.*, supra, 230 Conn. 792, for the proposition that no constructive trust may be imposed on Thurston because she did not engage in wrongful or unconscionable conduct. In *Aetna Life & Casualty Co.*, we stated that the equitable remedy of constructive trust requires that "the party sought to be held liable has engaged in conduct that *wrongfully* has harmed the plaintiff." (Emphasis in original.) Id., 791. In that case, we held that the remedy of constructive trust was not appropriate because the bank was not legally liable "under Connecticut law regarding the specific obligations of a bank as applied to [that] case." Id., 792. That specific holding, however, does not preclude a conclusion in the present case that Thurston's conduct, in taking the benefits of the trustee's actions without also shouldering a fair proportion of the burdens of those actions, would wrongfully harm Wendell.

viously, under the *Kotkin* doctrine, Wendell should be permitted to seek satisfaction of the debt, by way of a constructive trust, without necessarily foreclosing on the mortgage on the Meriden property that secured it.

The trustee and Thurston argue, however, and the trial court concluded, that Wendell should not be permitted to obtain a constructive trust in this case without first establishing that there is insufficient equity in the Meriden property to satisfy the debt, a task that Wendell failed to perform in the trial court. Although this argument has considerable weight, we conclude that it is misplaced. Although the potential of equity in the Meriden property is relevant, we conclude that it is appropriately taken into account not in the decision regarding whether there should be a constructive trust on the Massachusetts property, but in the decision regarding the monetary extent of that trust, and the extent and timing of its enforcement.

The determination that a constructive trust could be imposed on the Massachusetts property is, in a sense, the beginning of the inquiry, not the end. A constructive trust is a flexible equitable remedy whose enforcement is subject to the equitable discretion of the trial court. See *Connecticut Bank & Trust Co.* v. *Winters*, 225 Conn. 146, 162, 622 A.2d 536 (1993) (" 'equitable power must be exercised equitably . . . [but] [t]he determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court' "). The trial court may recognize the existence of the constructive trust and, nevertheless, decline to order the conveyance or other disposition of the property in satisfaction of the debt. For example, "[i]n some cases [in which a constructive trust has arisen] . . . where a proceeding at law can be maintained for the property or its value and where the legal remedy is adequate, a proceeding in equity cannot be maintained. The refusal of the court to permit specific

recovery of the property in a proceeding in equity, however, does not necessarily mean that there is no constructive trust." Restatement, Restitution § 160, comment (e) (1937); 5 A. Scott, supra, § 462.3. To say that the Massachusetts property is subject to a constructive trust in Wendell's favor is not to say that Wendell owns the property. On the contrary, it is to say only that Wendell may seek satisfaction of its debt, and no more, out of that property even though the owner of the property, Thurston, personally does not owe Wendell anything on the note. The extent to which Wendell may actually appropriate the property to satisfy its debt, the timing of such appropriation, and the extent to which there are other available assets, such as the Meriden property, from which Wendell may be able to and may be required first to satisfy its debt, are matters left to be decided on remand by the trial court in the exercise of its discretion.

## II

Gottesdiener and Company claims that, if a constructive trust is imposed on the Massachusetts property, we should either remand the case for consideration of whether the mortgage to Gottesdiener and Company should be subordinated to the constructive trust, or decide on the facts as found by the trial court that no such subordination is appropriate. We disagree. We conclude that, on the basis of the undisputed facts of this case, the mortgage to Gottesdiener and Company should be subordinated to the constructive trust.

Gottesdiener and Company relies on the following findings of the trial court regarding the good faith acquisition of the mortgage to it. The court found that, although Gottesdiener and Company acquired the mortgage in November, 1990, Wendell's note was not in default until September, 1991. Further, the trustee did not condition the distribution to Thurston of the Massa-

chusetts property on Thurston's providing a note and mortgage to Gottesdiener and Company. Gottesdiener and Company also argues that, in the absence of a showing by Wendell that it will be harmed by having to rely on the mortgage of the Meriden property to satisfy its debt, Wendell "has not demonstrated that it has or will be harmed by maintaining a position junior to that of . . . [Gottesdiener and Company] in the Massachusetts property." We are persuaded, nonetheless, that the remaining undisputed facts compel the conclusion that the mortgage of Gottesdiener and Company should be subordinated to a constructive trust in favor of Wendell.

When the trustee distributed the property to Thurston without providing for the payment of the trust's obligation to Wendell, thus leaving the trust without adequate funds to satisfy that obligation, he left Wendell, the trust's creditor, with only two possible sources of satisfaction of its debt: the equity in the Meriden property; and a potential constructive trust on any property so distributed.[11] Nonetheless, the trustee simultaneously arranged for a mortgage on the distributed property. The necessary effects of that mortgage were to benefit the trustee individually, by securing underlying obligations, past and future, to his accounting firm, Gottesdiener and Company, and to undermine the value of one of the only two possible sources of satisfaction of the trust's obligation to Wendell. Regardless of the intentions or good faith of Thurston and the trustee, therefore, the effect of the mortgage to Gottesdiener and Company is to benefit the interests of the trustee and to burden the interests of Wendell. Given the func-

---

[11] It is also true, however, that Carabetta Enterprises, Inc., which guaranteed the promissory note in connection with the transfer of the mortgage to Wendell, is, at least theoretically, a possible source of satisfaction of the debt. None of the parties, however, has suggested that this theory is a reality. If it is, Gottesdiener and Company, Thurston and the trustee remain free to suggest it to the trial court on remand.

tionally equivalent identities of the trustee and Gottesdiener and Company, we conclude, as a matter of law, that Wendell's constructive trust should be prior to Gottesdiener and Company's mortgage.

If, as Gottesdiener and Company suggests, Wendell's note may be satisfied out of the Meriden property, and if the trial court on remand requires Wendell to follow that route before enforcing the constructive trust, then the subordination that we mandate will not harm Gottesdiener and Company. To the extent, however, that the Meriden property is not sufficient to satisfy the trust's obligation to Wendell, then Gottesdiener and Company should not be benefited at the expense of Wendell.

The judgment is reversed and the case is remanded to the trial court with direction to render judgment for Wendell imposing a constructive trust on the Massachusetts property, subordinating the mortgage of Gottesdiener and Company to that trust, and for further proceedings according to law.

In this opinion CALLAHAN, NORCOTT and PALMER, Js., concurred.

BERDON, J., concurring. If the corpus of a trust has been distributed to its beneficiary by the trustee, and the trustee is not personally liable for the debts of the trust, then a constructive trust may be imposed on those distributed assets, subject to certain exceptions.[1] "If the trustee is personally liable on the claim, however, and is solvent so that the [creditor of the trust] could enforce the claim against the trustee personally, he

---

[1] Beneficiaries of a trust will not be personally liable, and therefore their assets will not be subject to a constructive trust, if either (1) they are a bona fide purchaser, or (2) they have so changed their position that it would be inequitable to compel payment from them. 3A A. Scott, Trusts (4th Ed. Fratcher 1988) § 279, pp. 533–34.

cannot bring a suit in equity against the beneficiaries, since his legal remedy against the trustee is adequate." 3A A. Scott, Trusts (4th Ed. Fratcher 1988) § 279, p. 533. In this case, neither party raises the issue of the trustee's liability or solvency.

Accordingly, I agree with the majority opinion.