[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this action plaintiff, conservator of the estate of Angelo Amenta, seeks the imposition of a constructive, trust, on two separate funds: (1) proceeds of a real estate transaction involving 540-542 Franklin Avenue, Hartford, Connecticut and (2) a lump sum benefit received by defendant Sebastiana Amenta, as representative payee/or Angelo Amenta, from the Social Security Administration. Plaintiff also seeks an accounting of the lump sum benefit.
After the trial of this case to the court, plaintiff moved to amend the complaint to state more clearly his claim that defendant is a trustee of the proceeds of the real estate CT Page 8128 transaction and to make more specific his prayer for equitable relief. The matters in the requested amendments, except as hereinafter stated, were expressed in plaintiff's motion to strike from the jury list, in a pretrial memo and in a joint trial management conference report and so came as no surprise to defendant. The exception is the request in the prayer for relief for an equitable lien on defendant's Rocky Hill property which had not previously been mentioned. The motion to amend is granted with the exception of the prayer for the equitable lien.
At the outset of the trial the parties stipulated Angelo was incompentent to testify. From the evidence the court makes the following findings of fact. In 1975 Angelo Amenta, ward of the plaintiff held a one-half interest in premises' known as 540-542 Franklin Avenue. Hartford, Connecticut, as tenant in common with his brother Armando Amenta and defendant Sebastiana Amenta, Armando's wife, who held the other half interest in survivorship. The premises consist of a three-family house. Angelo, Armando and Sebastian and their two children, and Angelo's and Armando's mother lived communally on the second and third floors. The family group was close.
For some time there were indications Angelo was mentally impaired. Sebastiana, in a prejudgment remedy hearing testified, "He was — my brother-in-law has — has been sick for quite a while. Since the first day I got married he was — he was never a normal person . . . and but my husband and I being a family, always tried to help him."
In 1987 Angelo showed signs of serious psychiatric problems. In that year a social worker came to the house to help him. He had worked at Jacobs Manufacturing Company since 1972 and was a steady, reliable employee. In May 1987 he started to act strangely, stopped going to work and was finally terminate for unexplained absences. He never worked after that. In November 1987 he incurred chest pains while shoveling snow and was taken to the Hartford Hospital by the police. A note in the Hartford Hospital report says. "Family thinks patient has psychiatric problems." Angelo was referred to the psychiatric clinic for follow-up, but he never attended.
In November 1987, Armando and Sebastiana filed a partition action against Angelo. They were represented by Attorney Robert Shluger, a partner of Attorney Michael Peck. Angelo did not have an attorney to enter an appearance in the suit, but indicated to CT Page 8129 Armando and Sebastiana he wanted to own the house by himself and live there alone. On March 15, 1988 he handwrote a note as follows: "I'm [sic] Angelo Amenta, want to buy the other half of the property at 540 Franklin Avenue from my brother Armando and his wite Sebastiana Amenta for the price of $200,000 (two hundred thousand dollars)." He signed it and his signature was notarized.
Defendant Sebastiana did not present this document at the prejudgment remedy hearing. The circumstances surrounding the preparation and execution of the document by Angelo were not explained at the trial. Neither party called the notary public. The court infers the agreement was both improvident and unrealistic on Angelo's part. He had no way to pay that sum except by a mortgage he could not offer to carry and moreover, the price for the one-half interest was excessive, as events quickly revealed.
Two days after that agreement Angelo applied for a mortgage of $225,000 at People's Bank. On the application Angelo listed his gross monthly employment income of $7500 and gross monthly rental income of $1500, totaling $9,000. This clearly was not the truth. Angelo was not working and the first floor was not rented. The application listed monthly expenses of $2245 for the new mortgage being applied for, insurance and real estate taxes, which Angelo had no means to pay. The application listed Michael Peck as Angelo's attorney.
The bank obtained an independent appraisal of the property for $300,000. It agreed to a mortgage of $210,000, the monthly carrying costs of which, together with insurance and taxes, came to $2161.57.
On May 3, 1988 at Attorney Shluger's office, Armando and Sebastiana transferred all their interest in the Franklin Avenue property to Angelo. No conveyance tax was paid on recording the deed. The next day the People's Bank mortgage closing occurred at the office of Clark, Mayo, Gilligan and Zito. Angelo was represented by Attorney Shluger. The following amounts were disbursed:
 Settlement charges, including origination fee, bank and . . . . recording fees $ 9,382.92
Pay off of Bank of CT Page 8130 Hartford mortgage 44,398.14
 Payment to Armando and Sebastiana 180,000.00 ----------- $233,781.06
In order to make up the deficit from the $210,000 mortgage, Angelo paid at the closing $23,781.06. He also paid $3000 as a commission to Century 21-Action. In addition, Angelo gave a second mortgage and note to Armando and Sebastiana for $20,000.
A few days after the closing, Attorney Shluger filed a withdrawal of the partition action on behalf of Armando and Sebastiana.
On August 16, 1988 Armando and Sebastiana used the proceeds they received from the mortgage closing to purchase a home at 160 Falcon Ridge Road, Rocky Hill, Connecticut. They were represented in that transaction by Robert Shluger.
Angelo never made any payments on the People's Bank mortgage. In February 1989 the Bank started a foreclosure action. Armando and Sebastiana, holding a recorded second mortgage, were named as defendants. They appeared and were represented by Attorney Shluger. Angelo was not represented and was duly defaulted. A judgment of strict foreclosure was entered on June 12, 1989. The debt was found to be $38,249.64 and the value of the property was fixed at $220,000. Title vested in the Bank on July 28, 1989. A few months later Angelo was ejected.
In September 1989 he was found in his garage with a bottle of transmission fluid and acting in a "bizarre" manner. He was making delusional statements to the effect that Governor O'Neill was going to pay his bills and his former company owed him a million dollars. This led to his emergency admission to Hartford Hospital and then to Cedarcrest Regional Hospital. The diagnosis was "delusional (paranoid) disorder." The consulting psychiatrist's report indicated Angelo had a history of depression ten years before and had his first "psychotic reaction" two years before. Dr. Sergio Mejia testified Angelo had been mentally ill since his Hartford Hospital admission in 1987.
In November 1989 Angelo, assisted by Sebastiana, made application for Social Security Disability Benefits as a result CT Page 8131 of mental illness. His application was granted and Sebastiana was designated as the representative payee of his benefits. On March 7, 1990 Sebastiana was paid $11,398 by Social Security Administration on behalf of Angelo which she deposited into a certificate of deposit in her and Armando's name.
Angelo was released from Cedarcrest in December 1989 and lived for a time in a basement apartment at 2 Baldwin Street provided for him by Armando.
Sebastiana received Angelo's Social Security monthly benefit check of $793 (subsequently raised to $885) which she used to pay herself rent for Angelo's occupancy of the basement apartment.
Sebastiana made the following withdrawals from the certificate of deposit:
 8/21/90 — 1/21/90 $1,896.05 8/21/90 — 9/21/91 378.67 7/22/92 — 8/22/92 356.67 8/21/92 — 9/22/92 1,957.41 8/20/93 — 9/21/93 273.20 1/21/94 — 6/29/95 4,262.95 --------- $9,129.65
Plaintiff was appointed conservator of the estate of Angelo on September 9, 1993. He demanded an explanation from Sebastiana of the above withdrawals, but none has been given. The present balance of the certificate of deposit is $3,774.56.
Armando died on June 24, 1994. All of his assets passed in survivorship to Sebastiana, including the certificate of deposit and the premises at 160 Falcon Ridge Road, Rocky Hill.
1.
The first claim of the plaintiff is that this court should impose a constructive trust in favor of Angelo on his share of the proceeds of the mortgage transaction.
Both parties agree on the general standards governing the imposition of a constructive trust: "`[A] constructive trust arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, CT Page 8132 by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity, and good conscience, hold and enjoy, 76 Am.Jur.2d, Trusts § 221 p. 446, . . . .'" it. Aetna Life andCausualty Co. v. Union Trust Co., 230 Conn. 779, 791 (1994). It arises where "`a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it.' 5 Scott on Trusts (3d Ed) § 462 p. 3413." Brown v. Brown,190 Conn. 345, 349 (1983).
"`[A] constructive trust is a flexible equitable remedy whose enforcement is subject to the equitable discretion of the trial court.'" Wendell Corp. Trustee v. Thornton, 239 Conn. 109, 120
(1996).
The court finds the following facts gave rise to a constructive trust respecting the proceeds of the mortgage transaction: Angelo, Armando and Sebastiana lived communally at 450 Franklin Avenue. Although the relationship between Angelo and Sebastiana as brother and sister-in-law is not ordinarily one in which a special trust and confidence exists, Zack v. Gazauskas,171 Conn. 98, 104 (1976), in this instance Angelo was not "normal" and Sebastiana and Armando regularly cared for him as a member of their close family unit.
In May 1987 Angelo, who had been a steady worker, inexplicably stopped going to work and was terminated. In November 1987 he clearly manifested psychological problems for which Sebastiana sought to get him psychiatric help at the Hartford Hospital. Based on Angelo's psychiatric history, Dr. Mejia concluded he was mentally ill at least since that Hartford Hospital admission.
After Armando and Sebastiana started their partition action in November 1987, Angelo indicated he wanted to live at 450 Franklin Avenue by himself.
When he signed the declaration to sell his half interest in the property to Armando and Sebastiana for $200,000, Angelo was acting irrationally. He had no income, no interest in renting the property to others, and could not possibly pay monthly charges for a mortgage, taxes and insurance to carry the property.
Within two days after signing the declaration, Angelo CT Page 8133 appeared at the bank with Armando and Sebastiana's attorney to apply for a mortgage. He misrepresented on the application employment income of $7500 and rental income of $1500. The bank appraised the property at $300,000 and committed to a $210,000 mortgage with monthly carrying charges of $2161. At the closing, $180,000 was disbursed to Armando and Sebastiana and Angelo had to put in an additional $26,781 to pay off the prior mortgages and cover the closing costs.
Angelo never made a single payment on the mortgage. The court infers he never realized he had to and did not . . . understand the consequences of the mortgage. Within a few months, a foreclosure action was started and Angelo lost the property, plus $26,781.
This court concludes Armando and Sebastiana took unconscionable advantage of Angelo. They knew he was mentally ill when he agreed to sell his half interest for $200,000. They and their lawyer concocted the scheme of Angelo mortgaging the property to pay them the price.
Their lawyer went with Angelo to apply for the mortgage when Angelo misrepresented his income. They knew he did not have the means to pay the $2161 monthly expense of that mortgage. They received at the closing $180,000 plus a $20,000 second mortgage. After the inevitable foreclosure, Angelo ended up ejected from the property and out $26,781 in cash.
This was unconscionable conduct on the part of Armando and Sebastiana. They were unjustly enriched and in equity and good conscience should not retain Angelo's proportionate share of the mortgage proceeds. The court hereby orders a constructive trust be imposed on that share.
The court calculates it as follows: as owners of a half interest in the Franklin Avenue property, the most Armando and Sebastiana should have received at the mortgage closing was the value of the property at the time ($300,000), less the amount due on the existing mortgages ($44,398), less the settlement charges ($9,383), and less the real estate agent's fee of ($3,000), a balance of $243,219, which when divided in half, leaves $121,609. Armando and Sebastiana received in cash $180,000, or $58,391 more than they were entitled to. They were unjustly enriched by that amount. CT Page 8134
As a result a constructive trust is imposed on the $58,391 coming to Armando and Sebastiana as trustees for Angelo. Upon Armando's death Sebastiana became the sole trustee of this fund. A judgment is hereby entered in favor of the plaintiff, as conservator of Angelo, against defendant Sebastiana for $58,391.
2.
Plaintiff's second claim is for the imposition of a constructive trust on the lump sum Social Security benefit of $11,398 paid to Sebastiana as representative payee of Angelo, and that Sebastiana be compelled to account for disbursement of that sum.
Before that claims is reached, the court must deal with the defendant's special defense of Statute of Limitations. Defendant argues that plaintiff is asserting a cause of action in conversion, which occurred in 1990 and since this suit was started in 1995, it is barred by C.G.S. § 52-577 which provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."
This action seeks the imposition of a constructive trust and an accounting by Sebastiana of the pay out of that benefit. Although it appears to sound in conversion, it is an equitable action.
The statute of limitations is not a bar to maintenance of such an action. McDonald v. Hartford Trust Co., 104 Conn. 169,189 (1926). As stated in Dunham v. Dunham, 204 Conn. 303, 326
(1987): "The fallacy in the defendant's argument is his assumption that a court, acting under its equitable powers, is bound to apply the statute of limitations that governs the underlying cause of action. In fact, in an equitable proceeding, a court may provide a remedy even though the governing statute of limitations has expired, just as it has discretion to dismiss for laches an action initiated within the period of the statute."
Defendant further asserts that because the Social Security Act, 42 U.S.C. § 405 (j)(3)(D), empowers the Social Security Administration to demand the representative payee to make periodic accountings, the misuse of benefits must be considered a federal matter, entrusted to the Social Security Administration and the federal courts, and state courts do not have CT Page 8135 jurisdiction. While there is some authority for this position inSocial Security Law and Practice, Vol. 2A, Part 5, Section 32.16, recent cases do not support it.
In Grace Thru Faith v. Caldwell, 944 S.W.2d 607 (Tenn., App. 1996) the Tennessee Court of Appeals had to decide whether federal law deprived the state court of subject matter jurisdiction in a case compelling a representative payee to account. It applied the accepted standards for determining preemption: (1) has Congress defined explicitly the extent its enactment preempts state laws; (2) did Congress intend the Federal Government to occupy the field exclusively; (3) does state law conflict with federal law. Analyzing the Social Security Act in light of these standards, the Tennessee court concluded that the Act, and the regulations promulgated pursuant to it, neither explicitly nor implicitly preempted state jurisdiction over the issue of a representative payee's misuse of benefits. The court held: "Accordingly, if a representative payee misuses or misappropriates SSI benefits paid to him on behalf and for the use of the beneficiary, Tennessee Courts have jurisdiction to examine the payee's accounting, determine if any abuse has occurred and order the appropriate remedy."944 S.W.2d at 613. See also In re Guardianship and Conservatorship of Cavin,333 N.W.2d 840, 841 (Iowa 1983); In re Kammer, N.Y.S.2d 845 (N.Y.App. Dev. 1983). Catlett v. Catlett, 561 N.E.2d 948 (Ohio 1988).
Based on those authorities this court determines it does have jurisdiction.
Pursuant to Social Security law, a representative payee has the duty to "(A) to exercise prudence and care in managing the Social Security Benefits received in Trust; (B) to apply the benefit payments to the beneficiary's use and benefit," SocialSecurity Law and Practice, Vol. 2A, Part 5, Section 30.25.
Thus, the Social Security law itself, in effect, imposes a constructive trust on funds received by the representative payee. This court specifically imposes such a trust on those funds.
Finally, defendant contends that Social Security Administration regulations, 20 C.F.R. § 404. 2040(d), authorizes a representative payee to satisfy debts of the beneficiary incurred prior to the first month for which payments are certified to the payee. Therefore, Sebastiana argues, she has CT Page 8136 the right to apply the balance of the lump sum benefit ($3,774.56) toward payment of the $20,000 mortgage note executed by Angelo to her.
While a representative payee has the right to pay prior debts of the beneficiary from funds received from the Social Security Administration, the issue before this court is whether or not he/she can pay him/herself for a prior debt owed by the beneficiary to him/her from such funds. Since the Social Security Administration implicitly treats such funds as if held in trust for the benefit of the beneficiary, and since this court specifically imposes a constructive trust on the funds received by Sebastiana for the benefit of Angelo, the analogy to fiduciary obligations is apposite.
The general rule is well established that a trustee shall not engage in self-dealing — that is, shall not deal as a trustee with himself as an individual. "The test of forbidden self-dealing is whether the trustee has a personal interest in the subject transaction of such a substantial nature that it might affect his judgment in material connection." 76 Am.Jur.2d Trusts § 384 (p. 379). The prohibition of self-dealing by a trustee extends to buying trust assets, selling assets to the trust, borrowing money from the trust, commingling trust and personal assets. 76 Am.Jur.2d Trusts §§ 384-388; Bogert, Trusts and Trustees.2d Ed. rev. (1993) §§ 543, 543(A), (B), (C), (D), (E). Included within that prohibition is that a trustee cannot "enforce a claim against trust property that he had purchased." Bogert, supra § 543(D) p. 308. It follows a trustee cannot pay to him/herself out of trust assets a prior debt owed to him/her by the beneficiary. Particularly is that so in this case when the mortgage debt is of questionable validity due to the impaired competence of Angelo at the time he incurred it.
Thus, this court holds that Sebastiana cannot apply the balance of the lump sum payment ($3,774.56) held by her toward Angelo's mortgage debt. It orders that balance be paid to the plaintiff, as Angelo's conservator and successor representative payee.
The court further orders an accounting by defendant Sebastiana of the $11,398, plus interest, received by her as representative payee of Angelo. Pursuant to C.G.S. 52-401, et seq., it appoints Attorney Peter Appleton of Hartford as auditor to take the account of Sebastiana and to report to this court. CT Page 8137
Based on the foregoing, judgment may enter in favor of plaintiff (1) imposing a constructive trust on the sum of $58,391 which came unjustly to defendant Sebastiana from the mortgage transactions and ordering defendant Sebastiana to pay said sum to the plaintiff, and (2) imposing a constructive trust on the lump sum benefit received from the Social Security Administration and ordering defendant Sebastiana to pay to plaintiff the balance of $3,774.56, plus accrued interest, and (3) ordering defendant Sebastiana to account for that lump sum benefit to Attorney Peter Appleton, pursuant to § 52-401 et seq., who shall report to this court which shall render judgment on that accounting accordingly.
SATTER, J.