**UNITED STATES of America, Plaintiff,**

v.

**Susan SNYDER, et al., Defendants.**

**No. 3:01–CV796(PCD).**

United States District Court, D. Connecticut.

Aug. 14, 2002.

Christine L. Sciarrino, U.S. Attorney's Office, New Haven, CT, John V. Cardone, John A. Lindquist, Jennifer G. Cohen, U.S. Department of Justice Tax Division, Washington, DC, for Plaintiff.

Edwin L. Doernberger, Saxe, Doernberger & Vita, PC, Hamden, CT, David L. Gussak, Reiner, Reiner & Bendett, Farmington, CT, for Defendants.

### RULING ON UNITED STATES'S MOTION FOR SUMMARY JUDGMENT

DORSEY, Senior District Judge.

Plaintiff, the United States of America, moves for summary judgment. Its motion is denied.

## I. JURISDICTION

Subject matter jurisdiction is pursuant to 28 U.S.C. § § 1340, 1345 and 22 U.S.C. §§ 7402, 7403.

## II. BACKGROUND

The following facts are undisputed. During 1989, 1990, and 1991, Russell and Stelle Mahler ("Russell and Stelle") accrued federal tax debt for willfully failing to collect, account for, and pay taxes on the wages of their company's employees. On July 12, 1995, Stelle gave her daughter, Defendant Susan Snyder, $44,000 for the purpose of purchasing the property located at 14 Michele Lane, Madison, Connecticut ("14 Michele Lane"). To her Uniform Loan Application for the purpose of purchasing 14 Michele Lane, Defendant attached a "Certificate of Gift," signed by Stelle indicating that the $44,000 was a gift. On or about August 4, 1995, Defendant used the $44,000 as a down payment on the purchase of 14 Michele Lane for $282,500. The 14 Michele Lane deed remains in Defendant's name. Defendant's place of residence before and after the purchase of 14 Michele Lane is 12577 McIntire Drive, Woodbridge, Virginia.

Russell and Stelle maintain 14 Michele Lane as their residence. Evidence submitted in the form of bank checks shows that Russell regularly makes the mortgage payments from funds over which Defendant has no control. On September 30, 2000, the United States received a judgment pursuant to 26 U.S.C. § 6672 (trust fund recovery penalty) against Russell and Stelle for their unpaid tax debt. On February 28, 2001, the federal tax lien judgment was amended and principal amounts were entered against Russell and Stelle of $200,991 and $200,249, respectively. Pursuant to IRC § 6321, unpaid federal tax liens remain against all property and rights of Russell and Stelle.

The United States now moves for summary judgment. In the alternative, the United States moves to preclude Defendant from testifying in her defense.

## III. DISCUSSION

The United States argues that (1) Defendant holds bare legal title to 14 Michele Lane as a nominee for her parents; (2) that there are no genuine issues of material fact as to whether the lien against Russell and Stelle can attach to 14 Michele Lane; and (3) the $44,000 transfer was fraudulent and that a constructive trust should therefore be imposed as an equitable remedy. Defendant asserts that the $44,000 was intended to be a gift from Stelle, and as a gift, there is no presumption of a constructive trust.

### A. Standard of Review

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The mere exis-

tence of an alleged factual dispute is not, on its own, sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

While the court is required to view the inferences to be drawn from the facts in the light most favorable to the opposing party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted), a party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986).

The party without the burden at trial may defeat summary judgment by providing sufficient facts to establish that there exists a genuine issue of material fact necessary for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Mere denials or conclusory allegations in legal memoranda are not, on their own, evidence and cannot create a genuine issue of material fact where none would otherwise exist. *See Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980) (citation omitted). "[A] party who asserts the privilege against self-incrimination must bear the consequence of lack of evidence, and the claim of privilege will not prevent an adverse finding or even summary judgment if the litigant does not present sufficient evidence to satisfy the usual evidentiary burdens in the litigation." *United States v. 4003–4005 5th Ave.*, 55 F.3d 78, 83 (2d Cir.1995) (internal citation and quotation marks omitted).

## B. Nominee Theory

■ Under the nominee doctrine, an owner of property may be considered a mere "nominee" and thus may be considered to hold only bare legal title to the property. The District Court of New York, in deciding a case on remand from the Second Circuit, applied the nominee doctrine in the case of *LiButti v. United States*, 968 F.Supp. 71 (N.D.N.Y.1997). The United States, in an attempt to collect unpaid tax debt, asked that court to declare a father the "true" owner of a race horse, title to which was in his daughter's name. *Id.* at 75. In reviewing New Jersey state law, that court found no reported New Jersey cases applying the nominee doctrine. *Id.* Nonetheless, that court chose to apply six factors used by other states' courts for the purpose of determining whether a transferee is a mere nominee of the transferor. *Id.* at 76. The six factors considered by *LiButti* in determining whether a transferee is a nominee are: (1) whether inadequate or no consideration was paid by the nominee; (2) whether the property was placed in the nominee's name in anticipation of a lawsuit or other liability while the transferor remains in control of the property; (3) whether there is a close relationship between the nominee and the transferor; (4) whether they failed to record the conveyance; (5) whether the transferor retains possession; and (6) whether the transferor continues to enjoy the benefits of the transferred property. *Id.*

The United States presents no case law wherein a Connecticut court has applied the nominee theory, nor is this court aware of any. This court declines the invitation to make the nominee theory Connecticut state law, especially in light of the available statutory remedies the legislature has already provided. Even if this court did apply these six factors to the $44,000 transfer from Stelle to Defendant, the United States has failed to successfully show that Defendant holds title to 14 Michele Lane as a mere nominee. The second factor, whether the property was placed in the nominee's name in anticipation of a lawsuit or other liability, is not satisfied. The United States proffers no evidence to

show that in 1995, Stelle and Russell anticipated a lawsuit or other liability. Also, the United States concedes the fourth factor, whether they failed to record the conveyance, is not satisfied. Therefore, the United States would not benefit at summary judgment from this court's adoption of the six-factor nominee test.

## C. Lien Theory

 The Internal Revenue Code, 26 U.S.C. §§ 6321, 6322, governs the IRS's authority to place a lien in favor of the United States upon the property, and rights to property, of any person liable to pay taxes, and who, after a demand has been made, refuses or neglects to pay his taxes.[1] Where, as in this case, an employer willfully fails to collect, account for, and pay over taxes withheld from the wages of employees, "[a]fter assessment, notice, and demand, the IRS may, therefore, create a lien upon the property of the employer, § 6321, and levy, distrain, and sell the employer's property in satisfaction." *Slodov v. United States*, 436 U.S. 238, 244, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978) (footnote omitted). "Assessment is made by recording the liability of the taxpayer in the office of the Secretary of the Treasury, 26 U.S.C. § 6203, and notice of the assessment and demand for payment generally are required to be made within 60 days of the assessment. 26 U.S.C. § 6303(a)." *Id.* at 244 n. 5, 98 S.Ct. 1778.

Pursuant to 26 U.S.C. § 6321, the United States argues that Russell's and Stelle's judgment for willfully failing to pay taxes authorizes federal tax liens upon all Russell's and Stelle's property and rights to property, including 14 Michele Lane. In order for this argument to succeed, the United States must show that "assessment, notice, and demand" were made prior to the $44,000 transfer of funds from Stelle to Defendant in 1995. Unless a demand had been made, a lien against property of Russell and Stelle did not yet exist at that time. Though trust fund recovery penalties were assessed against Russell and Stelle in 1996 and though the United States received judgments against Russell and Stelle in 2000, the United States has not submitted evidence which shows that a demand was made prior to the $44,000 transfer in 1995. As to whether the unpaid federal tax liens against Russell and Stelle can be applied to 14 Michele Lane under a lien theory, summary judgment is denied.

## D. Fraudulent Conveyance Theory

### 1. *Statute of limitations*

 Pursuant to CONN. GEN. STAT. § 52–552j, the statute of limitations with respect to a fraudulent transfer extinguishes a claim unless the action is brought within four years of the transfer or, if later, within one year of when the transfer could have reasonably been discovered by the claimant. However, "[t]he Connecticut three-year statute of limitations for setting aside fraudulent transfers is not applicable to a suit by the United States to recover the value of allegedly fraudulently conveyed property in partial satisfaction of outstanding tax deficiencies." *United States v. Upton*, 967 F.Supp. 57, 58 (D.Conn.1997) (citing *United States v. Fernon*, 640 F.2d 609, 612 (5th Cir.1981)). Since this case involves a suit by the United States to partially satisfy outstanding tax liens by recovering alleg-

---

**1.** 26 U.S.C. § 6321 provides, "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

edly fraudulently conveyed property, the four-year statute of limitations is not applicable.

### 2. *Merits of fraudulent conveyance theory*

■ The United States argues that since Defendant acquired 14 Michele Lane fraudulently, Defendant holds only bare legal title to the property and so a constructive trust should be imposed as an equitable remedy. The proposed constructive trust would provide the United States a source of partial satisfaction towards Russell's and Stelle's outstanding tax deficiencies. The Connecticut Supreme Court has held that "the party seeking to set aside a conveyance as fraudulent bears the burden of proving either: (1) that the conveyance was made without substantial consideration and rendered the transferor unable to meet his obligations; or (2) that the conveyance was made with a fraudulent intent in which the grantee participated." *Wendell Corp. Tr. v. Thurston,* 239 Conn. 109, 115–16, 680 A.2d 1314 (1996) (citation, alteration, and emphasis omitted); *Bizzoco v. Chinitz,* 193 Conn. 304, 312, 476 A.2d 572 (1984); *Zapolsky v. Sacks,* 191 Conn. 194, 200, 464 A.2d 30 (1983). Either test defined by the Connecticut Supreme Court is sufficient to set aside the conveyance. *Wendell Corp. Tr.,* 239 Conn. at 116, 680 A.2d 1314. A fraudulent conveyance must be proven by "clear and convincing" evidence. *Tessitore v. Tessitore,* 31 Conn. App. 40, 43, 623 A.2d 496 (1993). A party who seeks to set aside a transfer as fraudulent bears the burden of proving fraudulent intent. *Tyers v. Coma,* 214 Conn. 8, 11, 570 A.2d 186 (1990). "[T]he determination of the question of fraudulent intent is clearly an issue of fact which must often be inferred from surrounding circumstances . . . . Such a fact is, then, not ordinarily

proven by direct evidence, but rather, by inference from other facts proven—the indicia or badges of fraud." *Dietter v. Dietter,* 54 Conn.App. 481, 487, 737 A.2d 926 (1999) (citation omitted; ellipsis in original).

■ An imposition of a constructive trust can be an appropriate remedy where property has been fraudulently conveyed. *See generally Wendell Corp. Tr.,* 239 Conn. 109, 680 A.2d 1314. "A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee." *Cohen v. Cohen,* 182 Conn. 193, 203, 438 A.2d 55 (1980) (citation omitted). A constructive trust arises against one who by actual or constructive fraud or questionable means has obtained or holds the legal right to property which in the interest of equity he should not hold. *Giulietti v. Giulietti,* 65 Conn.App. 813, 856, 784 A.2d 905, *cert. denied,* 258 Conn. 946, 788 A.2d 95, *cert. denied sub nom. Giulietti v. Vernon Vill., Inc.,* 258 Conn. 947, 788 A.2d 96, *and cert. denied,* 258 Conn. 947 (2001).

■ The first fraudulent transfer test, requiring the conveyance to have been made without substantial consideration and to have rendered transferor unable to meet his obligations, is not fully satisfied. Defendant concedes the $44,000 was conveyed without substantial, or indeed any, consideration and was used to purchase 14 Michele Lane. That being said, the United States has not put forward any evidence to prove that the transfer left Russell and Stelle unable to meet their obligations.[2]

---

**2.** Also left unresolved is whether Russell and Stelle even knew they had outstanding tax

obligations to the United States at the time of the transfer.

The second fraudulent transfer test, requiring proof that conveyance was made with fraudulent intent, is not satisfied. In order to set aside a conveyance as fraudulent the United States must show that Russell and Stelle knew of their indebtedness to the United States at the time of the $44,000 transfer of funds. The United States puts forward some evidence to the effect that 14 Michele Lane was conveyed with fraudulent intent. In particular, the United States submits documents which show significant discrepancies between Defendant's reported income on her mortgage application for 14 Michele Lane and income reported on her tax returns submitted to the IRS. On the first page of Defendant's 1995 Uniform Residential Loan Application for the purpose of purchasing 14 Michele Lane, Defendant indicated that she was employed as a "Director" for Broad Store Corporation, a corporation controlled by Russell. Defendant further submitted to the loan company an IRS W–2 form showing that as Director of Broad Store Corporation she earned $88,000 in 1993 and $94,000 in 1994. In contrast to these representations, Defendant's 1993 and 1994 federal income tax returns show no income from Broad Store Corporation. Rather, Defendant listed her occupation as "Homemaker/PT Recept." The presumably fraudulent IRS W–2 forms[3] submitted to the loan company were never submitted to the IRS as part of Defendant's federal income tax returns, as would have been required by law. The foregoing pertains to the purchase of 14 Michele Lane, not to the conveyance of the $44,000, which may be related. These factors, while regardable as evidence of fraud in the purchase of the home, are not so determinative that every reasonable jury must determine that it is

clear and convincing evidence of the intent to defraud the United States at the time of the alleged fraudulent $44,000 transfer.

The conveyance which the United States seeks to set aside as fraudulent is the $44,000 transferred from Stelle to Defendant. The chronological order of events does not, as a matter of law, prove fraudulent intent with regard to the $44,000 transfer. The United States submits no evidence that in 1995, at the time of the $44,000 transfer, Russell and Stelle knew of their indebtedness to the United States. Judgments for the tax deficiencies were not entered against Russell and Stelle until 2000. Therefore, a genuine issue of material fact exists as to the existence of fraudulent intent at the time of the $44,000 conveyance in 1995. The "clear and convincing" standard of proof required in order to set aside the conveyance as fraudulent is not satisfied, especially when considered as a matter of summary judgment. Since Russell's and Stelle's intent at the time of the transfer has not been conclusively established, it would therefore be improper to impose a constructive trust on 14 Michele Lane as a matter of law. Rather the issue of fraudulent intent is a question of fact.

### E. Intent to Gift

Where the nominal grantee is the natural object of the payor's bounty the law presumes a donative intent. *E.g., Walter v. Home Nat'l Bank & Trust Co. of Meriden*, 148 Conn. 635, 639, 173 A.2d 503 (1961); *see* RESTATEMENT(SECOND) OF TRUSTS § 442. Particularly, where purchase money is provided by parents to their child, there is a presumption of a gift of money, rather than an intention of a trust. *See Zack v. Guzauskas*, 171 Conn.

---

**3.** Presumably, as it is possible that the IRS W–2 forms submitted to the loan company were accurate and her 1993 and 1994 federal income tax forms were fraudulent. Or both were fraudulent.

98, 102 n. 1, 368 A.2d 193 (1976). This presumption is one of fact, not of law, and may be rebutted. *Whitney*, 171 Conn. at 33, 368 A.2d 96. For instance, the presumption of a gift was rebutted in the case of *LiButti v. United States*, 107 F.3d 110, 125 (2d Cir.1997) (interpreting New Jersey state law), where the Second Circuit held, in remanding an injunction barring the IRS from enforcing a tax levy against Plaintiff, that a nominee ownership could be determined based on the fact that a father who transferred money to his daughter for the purchase of a racehorse, did so with the intent to hide the funds from creditors. In *LiButti*, the facts showed that the father had supplied money to his daughter to purchase a race horse, in her name, subsequent to his being assessed by the IRS for several million dollars in unpaid income taxes. *Id.* at 113–14.

■ Defendant submits an affidavit signed by Stelle which states that the $44,000 was a gift to Defendant, to be utilized as a down payment for 14 Michele Lane. In her affidavit, Stelle asserts her belief that at the time of the purchase of 14 Michele Lane, Defendant planned to relocate from Virginia to 14 Michele Lane for the purpose of assisting in the family gasoline station and convenience store business. Defendant also submitted a "Certification of Gift" signed by Stelle as part of Defendant's Uniform Loan Application for the purchase of 14 Michele Lane. In response, the United States correctly argues that the intent of a gift is irrelevant where a transfer is deemed fraudulent. However, since the United States has failed to show conclusively that the $44,000 transfer from Stelle to Defendant was made with fraudulent intent, a genuine issue of material facts exists as to Defendant's assertion of an intent to give the $44,000 as a gift.

## F. Motion to Preclude Susan Snyder from Testifying in Her Defense

■ Defendant asserted her Fifth Amendment privilege against self-incrimination during discovery. In doing so, the United States and Defendant agree that Defendant waived her right to testify at trial. However, Defendant requests to reserve her right to move this court to modify the preclusion order and reopen discovery should she subsequently decide to waive her privilege. "[S]o long as a district court attempts to accommodate a claimant's fifth amendment interests, the nature and extent of accommodation should be left primarily to that court's discretion." *United States v. Parcels of Land*, 903 F.2d 36, 44 (1st Cir.1990). In cases where a litigant chooses to withdraw their Fifth Amendment privilege, "[t]he district court should, in general, take a liberal view towards such applications, for withdrawal of the privilege allows adjudication based on consideration of all the material facts to occur." *4003–4005 5th Ave.*, 55 F.3d at 84. In deciding whether to allow such a litigant to waive his or her privilege, it should be taken into consideration whether the privilege was originally invoked in a manner as to manipulate or gain an unfair advantage over opposing parties. *Id.* at 85. Evidence has not been submitted to the effect that Defendant has asserted her Fifth Amendment privilege in an abusive or manipulative manner. Therefore, Defendant retains the right to rescind the invocation of her right not to incriminate herself and thus any preclusion of her testimony, as to which this court will not now comment.

## G. Order Approving Stipulation

Still pending is the United States's motion to approve a stipulation between the Bank of America, N.A. and the United States. As the underlying stipulation has

already been approved, (Dkt. No. 15, margin endorsement), the motion is denied as moot.

## IV. CONCLUSION

The United States's motion to approve stipulation between Bank of America, N.A. and the United States as an order of the court, (Dkt. No. 16–2), is **denied** as moot. The United States's motion for summary judgment, (Dkt. No. 25–1), is **denied.** The United States's motion to preclude Defendant from testifying at trial of this matter in her defense, (Dkt. No. 25–2), is **granted.**

SO ORDERED.