HARTFORD WHALERS HOCKEY CLUB *v.* THE UNIROYAL GOODRICH TIRE COMPANY ET AL.
(15004)

PETERS, C. J., and CALLAHAN, BORDEN, BERDON and NORCOTT, Js.

Argued September 28—decision released November 8, 1994

*Michael D. O'Connell,* for the appellants (named defendant et al.).

*Daniel H. Kennedy, Jr.,* for the appellee (plaintiff).

BORDEN, J. The defendants appeal[1] from the judgment rendered by the trial court in favor of the plaintiff after a court trial. The plaintiff, Hartford Whalers Hockey Club, sued the defendants, The Uniroyal Goodrich Tire Company (Uniroyal) and Uniroyal, Inc.,[2] for amounts allegedly owed for advertising during the 1987–88 hockey season. The plaintiff asserted two theories of recovery against the defendants: (1) express contract between the plaintiff and the defendants based upon the apparent authority of the defendants' agent, Brass City Tire Company, Inc. (Brass City); and (2) unjust enrichment. The trial court rejected the theory of express contract, but rendered judgment in favor of the plaintiff on the theory of unjust enrichment.

The defendants claim that the trial court improperly concluded that: (1) any benefit accorded to the defendants was unjust; and (2) the plaintiff had established

---

[1] The defendants appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

[2] The parties and the trial court have treated the liability of these two defendants as one and the same, and we do so accordingly. A default judgment was rendered against a third defendant, Brass City Tire Company, Inc., and that judgment is not before us in this appeal. References to the defendants are to Uniroyal and Uniroyal, Inc.

the extent of the benefit to the defendants. We affirm the judgment of the trial court.

The trial court found the following facts, which the defendants do not challenge in this appeal.[3] The plaintiff is a limited partnership that owns and operates a National Hockey League franchise in Hartford. Uniroyal is a New York partnership that manufactures Uniroyal brand tires, and Uniroyal, Inc., is a dissolved corporation. Before the 1986–87 hockey season, the plaintiff's broadcast marketing consultant, Richard Chmura, attempted to obtain advertising business from Uniroyal. A representative of Uniroyal directed him to contact Richard Owen, Uniroyal's account manager for Connecticut, who maintained an office on the premises of Brass City, which was Uniroyal's Connecticut distributor. Thereafter, Chmura made a presentation to Owen and Ralph Giusto, the president of Brass City. Owen told Chmura to submit the presentation in writing to Young and Rubicam, Uniroyal's advertising agency, and informed him that approval of any advertising would be given by Frank Davis of Young and Rubicam.

Chmura negotiated a contract for advertising for the 1986–87 season with Davis. In accordance with Davis' instructions, Chmura sent the contract to Davis for execution. Furthermore, at Davis' instruction, the contract was divided into two parts. Both parts listed "Uniroyal Tires" as the advertiser. One part, in the amount of $26,000, was signed by Davis of Young and Rubicam. The other, in the amount of $34,000, was signed by Giusto of Brass City. Pursuant to Owen's instruction,

---

[3] The defendants do claim that one subordinate factual finding of the trial court was clearly erroneous. The defendants concede, however, that "[t]his correction to the court's factual finding should not ultimately alter the outcome of the appeal but must be made in order to maintain an accurate record." In view of the concession that any such factual error would not alter the outcome of the appeal, we decline to consider this claim.

Chmura sent all the invoices for the advertising to Young and Rubicam, which paid the invoices and was in turn reimbursed by Uniroyal. The advertising provided by the plaintiff for Uniroyal for the 1986–87 season consisted of radio advertising during the broadcasts of the plaintiff's games and print advertising including color advertisements in the plaintiff's yearbook and in Goal Magazine. It also included merchandising services, which consisted of tickets to hockey games, "VIP Nights," at which the plaintiff provided dinner and game tickets for twenty-five people, and "Skybox Nights," at which the plaintiff provided seats in the plaintiff's skybox for various games.

In May, 1987, Chmura contacted Owen about renewing the Uniroyal advertising contract for the 1987–88 hockey season. Chmura met again with Owen and Giusto, and they agreed that the radio and print advertising of the 1986–87 season would be duplicated for the 1987–88 season, and that Uniroyal would also have advertisements on one of the boards that surround the ice, which are known as dasher boards. At Owen's request, Chmura sent the first draft of the contract to Davis at Young and Rubicam and, after discussion among Chmura, Owen and Davis, also sent the final draft for Davis to sign. Davis then told Chmura that he could not sign the contract because Uniroyal was considering a change of its advertising agency. At Owen's instruction, Chmura sent the contract to Giusto at Brass City for execution and, on July 30, 1987, Giusto signed the contract in his capacity as president of Brass City.

Thereafter, Chmura received from Young and Rubicam the artwork and wording for the dasher board advertising, which contained the name "Uniroyal" and the words "Royal Care Tire and Service Group." Young and Rubicam also provided Chmura with the Uniroyal advertisement to be placed in the plaintiff's yearbook

and in Goal Magazine. Those advertisements took up full pages and contained a picture of three tires above the words "Star Performers" in large red letters. Underneath those words was the phrase "The Official Tire of the Hartford Whalers." The advertisements also described the qualities of Uniroyal tires that make them "star performers" and contained instructions to call the nearest Uniroyal dealer. The Goal Magazine advertisement also contained a listing of Uniroyal dealers.

During the 1987–88 hockey season, which began in September, 1987, forty hockey games were broadcast on television in the Hartford area and in other states. The Uniroyal dasher board was visible to the television audiences for approximately two and one-half minutes per game. The plaintiff customarily charged $1500 for twenty seconds of television advertising time during its games.

At Owen's direction, Chmura sent the invoices for the 1987–88 season advertising to Young and Rubicam. In November, 1987, Chmura and Owen met with Edward O'Neill, Uniroyal's sales development manager. Despite Uniroyal's claim at trial that, at that meeting, Owen and O'Neill had told Chmura that Uniroyal disavowed any responsibility for the 1987–88 contract, the trial court specifically found credible Chmura's contrary testimony, that it was not until March, 1988, when the season was nearly over, that Uniroyal disavowed responsibility and informed Chmura that Brass City was solely liable for payment.

Uniroyal sold its tires through dealers, including Brass City, which also sold other brands of tires. Uniroyal had a program in Connecticut whereby it gave its dealers advertising credits tied to tire sales, and those credits were used by the dealers to pay for advertising by the plaintiff and others. Owen and O'Neill never informed Chmura either of the existence of this

program or of their awareness, prior to the execution of the 1987–88 contract, that Brass City might not receive sufficient credits to pay for Uniroyal's advertising with the plaintiff under the 1987–88 contract.

The trial court rejected the plaintiff's claim that Uniroyal was liable to the plaintiff on a theory of express contract because Brass City had apparent authority to contract on behalf of Uniroyal. The trial court determined that the plaintiff had failed to establish Brass City's apparent authority. In the trial court's view, the plaintiff's knowledge of the relationship between Uniroyal and Brass City, combined with the unwillingness of Owen to sign the contract on Uniroyal's behalf, imposed a duty of further inquiry on Chmura regarding Giusto's authority to bind Uniroyal. That conclusion is not before us in this appeal.

The trial court determined, however, that the plaintiff was entitled to judgment on the basis of unjust enrichment. In this regard, the trial court found that Uniroyal had derived a benefit from the radio, print and dasher board advertisements that reached a large audience in Connecticut and in other states where the plaintiff's hockey games had been broadcast. The trial court also found that the value of the television advertising of the Uniroyal dasher board alone far exceeded the contract amount sought by the plaintiff. The trial court further found that Uniroyal had derived a benefit from the merchandising services provided under the contract to Uniroyal's employees and tire dealers. The trial court, moreover, found that neither Uniroyal nor Brass City had paid the plaintiff for the advertising and merchandising services provided by the plaintiff.

With respect to the measurement of the benefit derived by Uniroyal, the trial court found that the value of the advertisements to Uniroyal was at least consistent with the value agreed to by Brass City, namely,

the contract price. The court also found that Uniroyal, rather than Brass City, had received a benefit from the fact that persons in other states or outside Brass City's territory saw or heard the advertisements, and that the advertising campaign had referred to all Uniroyal tires, not just those distributed by Brass City, as "The Official Tire of the Hartford Whalers."

Accordingly, the trial court rendered judgment for the plaintiff on the theory of unjust enrichment in an amount equal to the contract price, namely $75,031.60, plus prejudgment interest. This appeal followed.

The defendants first claim that, "[a]s a matter of law, any purported benefit accorded to the [defendants] cannot be deemed 'unjust' in equity, in that the trial court already [had] found that the plaintiff had the ability and, indeed, the obligation to protect itself by inquiring as to the authority and identity of the party to its contract." Thus, the defendants argue, "[t]o allow the plaintiff in these circumstances to recover in unjust enrichment is a contradiction of the finding that the plaintiff could not recover under express contract." We are not persuaded.

"Unjust enrichment applies wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract. 5 S. Williston, Contracts (Rev. Ed.) § 1479. A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another. *Franks* v. *Lockwood,* 146 Conn. 273, 278, 150 A.2d 215 [1959]; *Schleicher* v. *Schleicher,* 120 Conn. 528, 534, 182 A. 162 [1935]. *Connecticut National Bank* v. *Chapman,* 153 Conn. 393, 399, 216 A.2d 814 [1966]. With no other test than what, under a given set of circumstances, is

just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is claimed, to examine the circumstances and the conduct of the parties and apply this standard. *Cecio Bros., Inc.* v. *Greenwich,* 156 Conn. 561, 564–65, 244 A.2d 404 [1968].'' (Internal quotation marks omitted.) *Providence Electric Co.* v. *Sutton Place, Inc.,* 161 Conn. 242, 246, 287 A.2d 379 (1971). "Unjust enrichment is, consistent with the principles of equity, a broad and flexible remedy. *Cecio Bros., Inc.* v. *Greenwich,* [supra, 564]. Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment.'' (Internal quotation marks omitted.) *Polverari* v. *Peatt,* 29 Conn. App. 191, 200–201, 614 A.2d 484 (1992).

Furthermore, the determinations of whether a particular failure to pay was unjust and whether the defendant was benefited are essentially factual findings for the trial court that are subject only to a limited scope of review on appeal. *Stabenau* v. *Cairelli,* 22 Conn. App. 578, 581, 577 A.2d 1130 (1990). Those findings must stand, therefore, unless they are clearly erroneous or involve an abuse of discretion. Id. This limited scope of review is consistent with the general proposition that equitable determinations that depend on the balancing of many factors are committed to the sound discretion of the trial court. *Reynolds* v. *Ramos,* 188 Conn. 316, 321, 449 A.2d 182 (1982); see also *Hamm* v. *Taylor,* 180 Conn. 491, 495–96, 429 A.2d 946 (1980) (whether interest rate is unconscionable to be determined from all facts and circumstances of transaction).

Applying these standards, we cannot conclude, as a matter of law, that the trial court abused its discretion in determining that the defendants' failure to pay the plaintiff was unjust, or that its determination was

clearly erroneous. The fact that the plaintiff could not recover under the contract does not bar its recovery under the theory of unjust enrichment; indeed, lack of a remedy under the contract is a precondition for recovery based upon unjust enrichment. *Providence Electric Co.* v. *Sutton Place, Inc.,* supra, 161 Conn. 246. Moreover, the court's finding that the plaintiff had not satisfied its obligation of inquiry as to Giusto's authority sufficiently to recover under the contract did not preclude a finding that, nonetheless, it would have been inequitable and contrary to good conscience for the defendants to retain the benefit accorded to them by the plaintiff. There was ample support in the facts found by the trial court to support its ultimate finding in this regard.[4]

The defendants next claim that the plaintiff did not establish the extent of the benefit to the defendants in a manner sufficient to sustain a claim of unjust enrichment. Specifically, the defendants argue that the plaintiff's proof was insufficient because the cost of the advertising cannot properly measure the benefit to the defendants. Thus, the defendants contend, the only proper proof of the benefit to the defendants would have been for the plaintiff to have established a specific link between the advertising provided by the plain-

---

[4] The defendants suggest that affirming the trial court's determination in this case would mean that whenever a local distributor of a national brand arranged for local advertising with the knowledge of the national manufacturer, the manufacturer could be held liable for the advertising on a theory of unjust enrichment. That suggestion, however, ignores the other pertinent facts of this case, such as: the defendants' direct involvement in the placing and design of the advertising program; the history of the prior year's advertising, for which the defendants were responsible; the fact that the defendants' representative maintained an office at Brass City; and the fact that, although the defendants knew that Brass City, which the defendants designated to sign the contract, might not have sufficient advertising credits with the defendants to pay for it, the defendants did not inform the plaintiff of their disavowal of any responsibility until the hockey season was nearly over.

tiff and additional revenues or profits of the defendants generated by the advertising. In this connection, the defendants further argue that, because the advertising also benefited individual dealers and distributors, as well as the defendants, the plaintiff's failure to allocate the benefit among its purported beneficiaries is fatal to the trial court's determination. We are unpersuaded.

The defendants are correct that the measure of damages in an unjust enrichment case ordinarily is not the loss to the plaintiff but the benefit to the defendant. See *Monarch Accounting Supplies, Inc.* v. *Prezioso,* 170 Conn. 659, 666–67, 368 A.2d 6 (1976). That does not mean, however, that, in a case such as this, a reasonable approximation of that benefit could not be derived from the evidence presented.

Where damages are appropriate but difficult to prove the law eschews the necessity of mathematical exactitude. Such "exactitude in the proof of damages is often impossible, and . . . all that can be required is that the evidence, with such certainty as the nature of the particular case may permit, lay a foundation which will enable the trier to make a fair and reasonable estimate." (Internal quotation marks omitted.) *Dooley* v. *Leo,* 184 Conn. 583, 587, 440 A.2d 236 (1981).

In this case, the trial court's finding, based upon the contract price agreed to by Brass City, was a fair and reasonable estimate of the benefit accorded to the defendants. See *Pleines* v. *Franklin Construction Co.,* 30 Conn. App. 612, 618, 621 A.2d 759 (1993) (damages in unjust enrichment properly measured by reasonable value of services provided). That estimate was amply supported by the trial court's findings that the defendants had agreed to and had paid for a similar contract for the previous year, that the value of the advertis-

ing on the dasher board had far exceeded the total contract amount, that Uniroyal had derived a benefit from the merchandising services provided to its employees and distributors, that Uniroyal but not Brass City derived a benefit from the exposure to potential consumers outside of Connecticut, and that the advertisements had referred to all Uniroyal tires as the official tire of the Hartford Whalers. Under these circumstances, it was reasonable for the trial court to have estimated the benefit to the defendants based upon a contract price on the same order as the price that they had paid the previous year for a less extensive advertising program, and based upon the same price that Brass City, which the defendants had designated to sign the contract for the year in question, had agreed to pay.

The theory of damages posed by the defendants' argument would be extraordinarily difficult, if not impossible, to put into practice, because the defendants' revenues would necessarily depend on many factors other than a particular local advertising program. These factors include the state of the local and national economy, the fortunes of the industry, and the degree of competition, to state but a few.

Furthermore, we find no support for the defendants' proposition, for which they offer no authority other than assertion, that the plaintiff was, in the circumstances of this case, obligated to establish an allocation of benefits among all potential beneficiaries of the advertising. The difficulty of establishing such an allocation is similar to that of establishing a specific link between local advertising and national revenues. Moreover, in this case the benefit flowing to others by virtue of the advertising ultimately also benefited the defendants, who were the sole source of the advertised products. While an allocation of benefits among beneficiaries may be appropriate in a case in which such an

allocation is reasonably possible, we see no justification for hobbling the plaintiff in this case with such an obligation.

The judgment is affirmed.

In this opinion the other justices concurred.