[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum Filed June 25, 1997
Counts 1 and 2 of the plaintiffs' four-count complaint concern premises at 519 Boston Post Road in Orange that the plaintiff Rosen Realty Associates had leased to Kids Den Furniture, Inc. The allegation is that on or about October 31, 1994, the lessee turned over possession of the premises to the defendants. In Count 1, Rosen Realty Associates sues for rent while in the almost identical language of count 2 the claim is for use and occupancy. Counts 3 and 4 involve premises in a building nearby that the plaintiff Paul Rosen had rented to Kids Den Furniture, Inc. The same allegation is made, namely, that on or about October 31, 1994, the lessees turned over possession of the premises to the defendants. In count 3, Paul Rosen claims rent, and in count 4, he seeks use and occupancy. The defendant's answer denies the material allegations of all four counts and, in CT Page 6453 addition, asserts several special defenses among which are an absence of privity of contract or estate and an absence of a landlord-tenant relationship.
At the close of the plaintiffs' case-in-chief, the court, upon the defendants' motion, struck counts 1 and 3 wherein rent was sought. The predicate for the court's action was a failure to produce evidence that established a landlord-tenant relationship either directly or circumstantially. See O'Brien Properties, Inc.v. Rodriguez, 215 Conn. 367, 372 (1990). No mention of the court's action appears in the plaintiffs' brief. This memorandum, therefore, will be concerned solely with the plaintiffs' claims for use and occupancy.
 I
From the evidence presented, the court finds that the following relevant facts were proved. On March 28, 1991, Rosen Realty Associates entered into a written lease with Kids Den Furniture, Inc., whereby Kids Den Furniture, Inc. became the tenant of a store at 519A Boston Post Road. The initial term of this lease was five years commencing May 1, 1991, and terminating on April 30, 1996. At or about the same time, Kids Den Furniture, Inc. leased warehouse space for the same term in a nearby building belonging to Paul Rosen.[1] Later in 1991, by an agreement between Rosen Realty Associates and Kids Den Furniture, Inc., a second store known as 519C Boston Post Road was added to the lease. The result was that Kids Den Furniture, Inc. rented approximately 10,000 square feet of retail space from Rosen Realty Associates and about 4000 square feet of warehouse space from Paul Rosen. In 1994, when the events that are the subject of this suit occurred, the monthly rental obligation of Kids Den Furniture, Inc. was $9,375.00 for 519A Boston Post Road, $3,208.34 for 519C Boston Post Road, and $1000 for the warehouse space.
Kids Den Furniture, Inc. was and still is a Connecticut corporation. Edward Kluft is its president and sole shareholder. His wife, Deborah Kluft, in 1994 was vice-president, and his mother was secretary-treasurer. The three officers were and perhaps still are the directors of the corporation. Deborah Kluft and the defendant Sandra Boltax Stern are sisters.
On August 25, 1989, the defendants who are husband and wife and both physicians loaned $100,000.00 to Kids Den Furniture, CT Page 6454 Inc. As evidence of this debt, Edward Kluft as president of the corporate debtor, signed a demand note for $100,000.00 that stated that it was secured by a security agreement and guaranteed by a guaranty agreement. The security agreement was placed in evidence, but the guaranty agreement was not and neither was any note for the additional $25,000.00 loaned by the defendants to Kids Den Furniture, Inc. in January 1990.
The security agreement, dated August 25, 1989, recited that it was given to secure the payment of the promissory note for $100,000.00 and that it gave to the defendants a continuing security interest in the entire inventory of Kids Den Furniture, Inc. In the event of a default on the note, the defendants as the "secured party" were empowered by the security agreement to receive income from sales of the inventory to be applied first to accrued and unpaid interest and then to the principal of the note. Financing statements pertaining to the security agreement were filed pursuant to the Uniform Commercial Code on October 28, 1991, and on November 15, 1991.
October of 1994, Kids Den Furniture, Inc. was in serious financial difficulty. Edward Kluft recalled that the plaintiffs were owed four months' rent and that the balance on the debt owed to the defendants amounted to $101,150.00. Sometime in October 1997, Edward Kluft decided that Kids Den Furniture, Inc. would cease doing business, but he did not tell anyone of his decision until October 31.
On November 2, 1994, Kids Den Furniture, Inc., acting by Edward Kluft, its president, Edward Kluft, individually, his wife, Deborah Kluft, and the defendants signed a document entitled "Turnover of Inventory". This document prepared by the defendants' attorney transferred to the defendants all of the inventory of Kids Den Furniture, Inc. on which they previously had a lien. The inventory, of course, was located in premises that Kids Den Inc. had leased from the plaintiffs. After signing the "Turnover of Inventory", Mr. and Mrs. Kluft and the defendants traveled to Hawaii where they were guests of the mother of Deborah Kluft and the defendant Sandra Boltax Stern who celebrated her eighty-fifth birthday by providing her children and their spouses with a vacation.
Although Kids Den Furniture, Inc. had ceased operations, Nate Kluft, the son of Edward and Deborah, remained on the premises to wind up the business. Two employees of the CT Page 6455 corporation assisted him. Nate Kluft endeavored to supply customers with merchandise that had been ordered for them and on which they had given deposits.
The defendants' attorney arranged for an auction of the inventory. A day-long auction conducted by professional auctioneers in the retail stores and the warehouse space was held on November 12, 1994. Gross receipts from the auction totaled $62,072.00. After paying expenses, the defendants were able to apply $50,000.00 in reduction of the amount owed to them by Kids Den Furniture, Inc.
Nate Kluft was informed of the auction by the defendants' attorney in the first week of November 1994. He assisted in the preparation for and at the auction. He was given permission by the defendants' attorney to keep and sell for himself the few items that were not sold at the auction. He sold these items as well as the office furniture of Kids Den, Inc., which was not a part of the turnover of inventory and other merchandise he had brought in as part of an unsuccessful attempt to start a new retail business in the leased premises.
A provision in the indenture of lease executed by the plaintiffs and Kids Den Furniture, Inc. limited the use of the leased premises to the sale (and storage) of furniture and related items. Another provision prohibited an assignment or subletting without the written consent of the lessor. Edward Kluft, as president of the lessee, gave the defendants authority to use the premises as part of the turnover of the inventory to them. Neither the lessee, Edward Kluft individually nor the defendants ever solicited or received permission to occupy from the plaintiffs.
The plaintiffs never performed any unequivocal act terminating the lease until November 14, 1994, two days after the auction. On that date, an agreement was reached with Nate Kluft whereby for a monthly rental of $500 he leased until May 31, 1995, part of the warehouse space that had been included in the lease to Kids Den Furniture, Inc.
Nate Kluft cleaned up the trash caused by the auction by November 14, 1994. He sold what was left over from the auction and the office furniture belonging to Kids Den Furniture, Inc. by November 26, 1994. David Kish, another tenant of Rosen Realty Associates, was a major buyer at the auction. His purchases were CT Page 6456 stored in the portion of the warehouse that was rented to Nate Kluft until the end of November 1994. Nate Kluft consented to the storage.
After the inventory was turned over to the defendants, James Rosen, a partner in Rosen Realty Associates, told the defendants' attorney that he expected them to pay. On another occasion, James Rosen requested payment from Sandra Boltax Stern.
 II
In their brief, the plaintiffs acknowledge the absence of an express contract between them and the defendants. Their contention, however, is that the defendants are liable on a theory of unjust enrichment as they would have been at common law in an action for assumpsit. The defendants' contrary claim is that there can be no recovery in unjust enrichment because that doctrine has not been pleaded. The defendants have also argued that the facts of this case do not support an award based on an implied or quasi contract to pay use and occupancy.
 A.
The modern view is to give pleadings a broad and realistic rather than a narrow and technical reading. Fuessenich v.DiNardo, 195 Conn. 145, 150 (1985). But one of law's fundamental principles is that the right of a plaintiff to recover is limited to the allegations of his complaint. Moore v. Sergi,38 Conn. App. 829, 841 (1995). An interpretation of what is encompassed in the pleadings always presents a question of law for the court to decide. Cahill v. Board of Education, 198 Conn. 229, 236 (1985).
Connecticut cases establish that an action based on unjust enrichment has three elements. The plaintiff must prove that the defendant was benefited; that the defendant did not unjustly pay for the benefit; and that the failure to pay was to the plaintiff's detriment. Barbara Weisman, Trustee v. Kaspar,233 Conn. 531, 550 (1995); Hartford Whalers Hockey Club v. UniroyalGoodrich Tire Co., 231 Conn. 276, 283 (1994). The unjust enrichment decisions contain broad language — i.e., "[a] right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another." BarbaraWeisman, Trustee, supra, 233 Conn. at 550; Hartford WhalersCT Page 6457Hockey Club, supra, 231 Conn. at 282; Providence Electric Co. v.Sutton Place, Inc., 161 Conn. 242, 246 (1971). While this language might be applicable in a myriad of legal situations, cases show that where unjust enrichment has been utilized, it has been specially pleaded. Barbara Weisman, Trustee, supra, Conn. Records Briefs, March term 1995, S.C. 15141, amended counterclaim, p. 8 par 14, Hartford Whalers Hockey Club, supra,231 Conn. at 277, Providence Electric Co. v. Sutton Place. Inc.,supra, 161 Conn. at 244. Cecio Bros., Inc. v. Greenwich,156 Conn. 561, 563 (1968); Eastern Metal Products. Inc. v. Deperry,44 Conn. App. 60, 61 (1997).
One reason underlying the rule relating pleadings to recovery is the prevention of surprise. Moore v. Sergi, supra,38 Conn. App. at 841. In terms of damages, unjust enrichment is not congruent with a claim for use and occupancy. Ordinarily in an unjust enrichment case, the measure of damages is not the loss to the plaintiff but the benefit to the defendant; although where a contract is unenforceable, the contract price may be evidence of value. Hartford Whalers Hockey Club, supra, 231 Conn. at 285,286. For claims of use and occupancy, the damages claimed are invariably an amount that represents that landlord's loss, that is the same amount as the rent contracted for in the lease. NewHaven v. Mason, 17 Conn. App. 92, 96 (1988); see Gen. Stat. §47a-3c.
Nor, in the court's opinion, is the plaintiffs' predicament of seeking a recovery on an unpleaded cause of action helped by the analogy to assumpsit. Assumpsit was a common law cause of action predicated upon a promise or engagement whereby one person promised or undertook to do or pay something for or to another. Two types of assumpsit existed. Special assumpsit when an action was derived from an express contract or promise and general or indebitatus assumpsit where the promise was implied in certain situations so that a quasi-contract existed. Black's Law Dictionary (6th ed. 1990).
None of the plaintiffs' citations, however, support a proposition that one who enters and uses premises at the invitation of the tenant ipso facto becomes unjustly enriched and liable to the landlord on a theory of indebitatus assumpsit. Moreover, in Westport v. Bossert Corporation, 165 Conn. 410,412-15 (1973), our Supreme Court likened indebitatus assumpsit to the common counts form of complaint. The common count writ and complaint were abolished in 1978. Practice Book § 115. Not CT Page 6458 having pleaded unjust enrichment, the plaintiff cannot assert it as a basis for recovery. "A plaintiff may not allege one cause of action and recover upon another." Malone v. Steinberg,138 Conn. 718, 721 (1952); Moore v. Sergi, supra, 38 Conn. App. at 841-42.
 B.
The remaining question is whether the plaintiffs should recover use and occupancy as requested in counts 2 and 4 of their complaint.
Nonpayment of rent did not automatically terminate the lease between the plaintiffs and Kids Den Furniture, Inc. The nonpayment only gave the plaintiffs the option of terminating the lease by some definite, unequivocal act clearly showing the exercise of the option. Chapel-High Corporation v. Cavallaro,141 Conn. 407, 411 (1954). An exercise of the option could have been shown by a notice to quit, a prerequisite to a summary process action, or if a summary process action were not contemplated, by a limitless number of alternatives. Sandrew v. Pequot Drug, Inc.,4 Conn. App. 627, 631 (1985). The plaintiffs' failure to terminate the lease meant that when the inventory was in the leased premises, the party entitled to possession of those premises was the lessee, Kids Den Furniture, Inc. who was then in possession through its agent Nate Kluft. In terms of entitlement to use and occupancy, the plaintiffs are in the same position as the unsuccessful landlord in Chapel-High Corporation v.Cavallaro, supra, 141 Conn. at 412.
Further, liability for use and occupancy in Connecticut comes from some contractual relationship that exists or has existed between the parties. Chapel-High Corporation v. Cavallaro, supra,141 Conn. at 412. The usual situation arises where a lease has expired or has been terminated and the tenant continues to occupy as a tenant at sufferance no longer liable for rent but under a duty to pay for use and occupancy. Lonergan v. Connecticut FoodStore. Inc., 168 Conn. 122, 130 (1975). Put another way, a tenancy at sufferance comes into being when a party who came into possession of real estate rightfully continues in possession wrongfully after the right to possession has been terminated.O'Brien Properties, Inc. v. Rodriguez, 215 Conn. 367, 372 (1990).
Borrowing from Gen. Stat. § 47a-3c governing residential tenancies, use and occupancy is defined as a amount equal to fair rental value. Rivera v. Santiago, 4 Conn. App. 608, 611 (1985). CT Page 6459 The statute has been described as a codification of the tenant's common law obligation to pay a fair rental value in the absence of a rental agreement. Bushnell Plaza Development Corporation v.Fazzano, 38 Conn. Sup. 683, 686 (App. Sess. 1983). As the factual findings of this case demonstrate, however, the defendants were neither tenants nor tenants at sufferance of the plaintiffs.
 III
For the reasons stated herein, judgment must be rendered for the defendants.
BARNETT, J.