[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I. INTRODUCTION
Thus collection action has been tried to the court. The defendant, Staddle Brook Development, Inc. ("Staddle Brook"), builds roads. The plaintiff, Empire Paving, Inc. ("Empire") paves them. In 1994, Empire contracted with Staddle Brook to pave two roads, one in Waterford (the "Waterford road") and the other in Hebron (the "Hebron road"). The Waterford road was, for all practical purposes, unproblematic. The Hebron road, in contrast, developed significant problems that eventually necessitated a repaving job by another contractor. When the problems with the Hebron road became evident, Staddle Brook stopped payment on both projects. These events have resulted in a welter of claims that CT Page 938 must now be sorted out by the court.
This action was commenced in December 1995 by Empire against two defendants: Staddle Brook and Marilyn Sylvester ("Sylvester"), who, Empire alleges, has agreed to assume individual liability for Staddle Brook's debt. Empire's complaint is in three counts. Each count asserts a claim for work done on the Waterford road. The first count alleges that Staddle Brook owes Empire a balance of $12,000 for Empire's performance of the Waterford road contract. The first count additionally claims attorney's fees, interest, and costs. The second count claims unjust enrichment. The third count asserts an individual claim against Sylvester.
In January 1996, Staddle Brook filed its answer, including a special defense and a counterclaim. The special defense claims, in its entirety, that "The plaintiff has been overpaid for the work done by it." The counterclaim contains five counts. The first two counts and the fifth count involve the Hebron road contract, the third count involves both contracts, and the fourth count involves Empire's claim against Sylvester on the Waterford road contract. The first count alleges that Empire failed to perform its contractual obligations in the Hebron road contract, requiring Staddle Brook to hire a third party to repair the damage. The second count alleges negligence in the performance of the Hebron road contract. The third count alleges that Empire was paid $140,000 on both contracts but was only due $134,471.05. The fourth count claims that Sylvester is not liable on the Waterford contract and that the claim against her constitutes an unfair trade practice in violation of Conn. Gen. Stat. § 42-110 ("CUTPA"). The fifth count asserts that Empire's action complained of in the first count constitutes an unfair debt collection practice in violation of 15 U.S.C. § 1692, et seq. (The fifth count would probably make more sense if it referenced the fourth count, but it unambiguously references the first count alone.) Empire claims in a special defense to the fifth count that, "There is no indication that the subject debt being collected was primarily for personal, family car household purposes."
The case was tried to the court on January 6 and 7, 1998. The parties submitted posttrial briefs on January 28, 1998. Empire's case and Staddle Brook's counterclaim involve distinct transactions and will be separately considered. CT Page 939
II. EMPIRE'S CASE
Empire's case, as mentioned, involves the Waterford road. On August 29, 1994, Empire and Staddle Brook signed a written contract in which Empire agreed to pave and curb the Waterford Road. The paving price was $6.95 per square yard, and the curbing price was $12 per linear foot. The "approximate total price" of Empire's services was $84,658. Empire subsequently performed its contractual duties involving the Waterford road, with few if any problems in the quality of the work. The problems in this case involve Staddle Brook's method of payment and Sylvester's individual liability. The payment issue will be addressed first.
Empire and Staddle Brook agreed on the Hebron road contract, discussed below, at about the same time that they agreed on the Waterford road contract. The Hebron road project was, however, completed first.
On December 9, 1994, Staddle Brook sent Empire a check in the amount of $125,000. No invoice had yet been received for either road, and the check contained no notation as to which project it was to be applied. There was no other communication from Staddle Brook involving the application of this payment. Empire chose to apply it to the Hebron road project first to pay that project in full and to apply the balance to the Waterford road project.
On December 15, 1994, Empire sent Hebron two invoices, one for the Waterford road and one for the Hebron road. The Waterford road invoice was in the total amount of $100,000. The invoice reflected a partial payment of $73,000 on December 9, 1994, and stated a balance due of $27,000. The Hebron road invoice was in the total amount of $52,000. That invoice reflected a complete payment of $52,000 on December 9, 1994, and stated a total amount due of zero.
Staddle Brook subsequently made two additional payments on the Waterford road contract. On January 12, 1995, it sent Empire a check in the amount of $10,000. A notation on the check said that it was for "Waterford." On April 16, 1995, Staddle Brook sent Empire a check in the amount of $5,000. A notation on that check said "Bal 12,000.00." This is the very balance that Empire claims to be due in its complaint.
There is no credible evidence that Staddle Brook communicated to Empire any direction on how its payment of $125,000 on December CT Page 940 9, 1994 was to be applied. Staddle Brook's owner testified at trial that Staddle Brook allocated the payment between the Hebron and Waterford projects on its own check stub. There is no evidence, however, that Staddle Brook's desire to make such an allocation was communicated to Empire in any way. In the absence of such communication, any attempted apportionment by Staddle Brook was plainly ineffective. See Stone Co. v. Rich,75 S.E. 1077, 1079 (N.C. 1912), and authorities cited therein.
"Ordinarily the debtor may direct at the time of payment to which of two or more debts or items of an account a payment shall be applied; on his failure to so direct the creditor may make the application." American Woolen Co. v. Maaget, 86 Conn. 234,243-44, 85 A. 583 (1912). Since Staddle Brook failed to direct any apportionment, Empire was allowed to allocate the payment as it chose. As mentioned, Empire chose to allocate the amount to the Hebron road project to pay that project in full and to apply the balance to the Waterford road project. Staddle Brook's annotations on its subsequent checks demonstrate that it was aware of this allocation and accepted it.
The conclusion is irresistible that Staddle Brook owes Empire a balance of $12,000 for Empire's performance of the Waterford road contract. Staddle Brook's notation on its check of April 16, 1995, acknowledges as much. Empire may consequently recover this amount on its contract claim.
Empire's contract with Staddle Brook also allows it to recover "all costs of collection including reasonable attorney's fees, and interest on the delinquent balance at the rate of one per cent (1%) per month." The evidence establishes that a reasonable attorney's fee, including the contested trial and posttrial briefing, is $4,000. The total interest to be awarded is $4,470. Judgment shall therefore enter in favor of the plaintiff on the first count in the total amount of $20,470 plus costs.
The second count, as mentioned, claims unjust enrichment. The evidence establishes that Staddle Brook was benefitted [benefited] by Empire's work on the Waterford road, that Staddle Brook unjustly did not pay the agreed upon price for the benefit, and that the failure of payment was to Empire's detriment. Empire has consequently established its cause of action for unjust enrichment. See Hartford Whalers Hockey Club v. Goodrich TireCo., 231 Conn. 276, 283, 649 A.2d 518 (1994). The appropriate CT Page 941 damages on this count are $12,000. Judgment shall enter on the second count in favor of the plaintiff in the amount of $12,000 plus costs. It should go without saying that judgment on the first and second counts is entered with respect to the same transaction, and the plaintiff may collect the judgment entered on those counts only once.
The third count alleges that Sylvester, by executing the contract, agreed to be liable for the sums claimed against Staddle Brook in the first count. The contract in question, a preprinted form prepared by Empire, purports to impose liability on "the undersigned individually, as well as any corporation or partnership which the undersigned represents." The contract is executed on two lines. The first line is printed "ACCEPTED: Buyer" followed by the signature of Thomas A. Sylvester, the owner of the company. Immediately below that line is the printed word "By" followed by the signature of "Marilyn Sylvester pres." The handwritten word "pres." is placed over the printed word "TITLE."
The relevant contractual language is, at best, ambiguous with respect to Sylvester's purported individual liability. On the one hand, the general language, quoted above, places liability on "the undersigned individually." On the other hand, the question remains as to just who "the undersigned" really is. The primary entity assuming the obligations of the contract is Staddle Brook, a corporation. Thomas Sylvester signs the contract individually. Marilyn Sylvester signs only as president. The third count seeks recovery against Marilyn alone. "[T]he almost universally accepted and reasonable rule of construction is that where the signature is that of the corporation, and the name or names of one or more of its officers in their official capacity are appended as subscribing agents . . . the corporation will be regarded as the signer and obligor, and the individuals will not be obligated, unless other language or the general tenor of the writing indicates a contrary intent." Jacobs v. Williams,85 Conn. 215, 219, 82 A. 202 (1912). Although the general language of the contract purporting to impose individual liability on the "undersigned" arguably makes the contract ambiguous, "when two or more meanings may fairly be given to language in a contract, the language is to be construed against the one who drew it." Sturmanv. Socha, 191 Conn. 1, 9, 463 A.2d 527 (1983). Under this canon of construction, any ambiguity in the contractual language must be construed against Empire. CT Page 942
For the reasons just explained, Sylvester is not individually liable under the contract. Judgment on the third count must enter in favor of the defendant.
III. STADDLE BROOK'S COUNTERCLAIM
Staddle Brook's counterclaim involves the Hebron road. The first count alleges that Empire failed to perform its contractual obligations on the Hebron road contract. the second count alleges negligence in the performance of that contract. Staddle Brook's claim is that the road was poorly paved and that, as a consequence, it had to be torn up and repaved at Staddle Brook's expense.
Staddle Brook argues that its claims are governed by article two of the Uniform Commercial Code rather than by the common law of contract. This argument is unpersuasive. The dealings between Empire and Staddle Brook did not constitute transactions "in goods" for purposes of Conn. Gen. Stat. § 42a-2-102. A careful review of the evidence establishes that this was primarily a contract for the purchase of services. The essence of the transaction was Empire's performance of the service of paving the road. Consequently, the common law of contract governs the case. See Incomm,. Inc. v. Thermo-Spa Inc., 41 Conn. Sup. 566,569-70, 595 A.2d 954 (1991).
The Hebron road contract, unlike the Waterford road contract, was an oral one, and its precise terms are a matter of dispute. The evidence establishes that Empire agreed to install bituminous concrete on the road surface to a depth of two inches and it further establishes that, at least in a few spots, less than two inches of concrete was actually installed. The total length of the road, however, is not in evidence, and it is impossible to tell on this evidence whether the breach of contract that these few spots represent is more than de minimus.
The evidence shows that the real problem that required the road to be torn up and repaved was that the road surface cracked in the spring. The depth of the road surface was not necessarily the cause of the cracking. The evidence also establishes that the installed base course on which the concrete was placed was inadequate and that Empire cannot be held liable for this inadequacy. No expert testimony on the cause of the cracking was submitted by either party, and in the absence of such testimony the court can only speculate as to the cause. Under these circumstances, Staddle CT Page 943 Brook cannot meet its burden of proof on this issue. Judgment must enter for the plaintiff on the first and second counts of the counterclaim.
The third count of the counterclaim alleges that Empire was paid $140,000 on both contracts but was only due $134,471.05. There is no evidence to support this claim. Judgment shall enter for the plaintiff on the third count of the counterclaim.
The fourth count asserts that Sylvester is not liable on the counterclaim and that the claim against her constitutes an unfair trade practice in violation of CUTPA. The activity complained of here — the filing of a single nonsham lawsuit — cannot form the basis of a claim under CUTPA. SuburbanRestoration Co. v. ACMAT Corp., 700 F.2d 98, 102 (2d Cir. 1983). Judgment must consequently enter for the plaintiff on the fourth count of the counterclaim.
The fifth count, as already mentioned, makes very little sense the way that it is phrased. There is no evidence to support it. Judgment shall enter for the plaintiff on that count as well.
IV. CONCLUSION
To recapitulate, Judgment shall enter in favor of the plaintiff on the first count of the complaint in the amount of $20,470 plus costs. Judgment shall enter in favor of the plaintiff on the second count in the amount of $12,000 plus costs. Judgment shall enter in favor of the defendant on the third count. Judgment shall enter in favor of the plaintiff on all five counts of the counterclaim.
Jon C. Blue Judge of the superior Court