[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The claim of the plaintiff, Associated Construction Company (Associated), as set forth in a one count amended complaint alleging unjust enrichment against the defendant, Town of Somers (Town), was tried to the court on November 4, and November 10, 1999. The parties subsequently filed simultaneous post-trial memoranda on January 21, 2000, supplemented by the Town on March 3, 2000, and by Associated on March 9, 2000.
The Court finds the following facts which are essentially undisputed. The Town sought to convert a high school building into an elementary school. (Panciera Testimony, Transcript, 11/04/99, p. 5.) On February 2, 1994, Maranba Builders, Inc. (Maranba), entered into a contract with the Town to serve as the construction manager for the project.[1]
(Plaintiff's Exhibit 1.) Pursuant to the contract, Maranba was responsible for providing the Town with monthly payment applications detailing, inter alia, the value and percentage of subcontractor work performed in that month. (Plaintiff's Exhibit 1; Panciera Testimony, Transcript 11/04/99, pp. 13-15; Giardini Testimony, Transcript, 11/04/99, pp. 57-58.) Upon receipt and certification of each application, the Town would then disburse a monthly progress payment to Maranba, minus a five percent retainage fee that the Town was contractually permitted to withhold until the project substantially was completed. (Plaintiff's Exhibits 1 and 2; Panciera Testimony, Transcript, 11/04/99, pp. 15-16.) CT Page 7317 Maranba, in turn, would pay each subcontractor its proportional share of the progress payment, minus the aforementioned retainage fee. (Plaintiff's Exhibits 1 and 2; Panciera Testimony, Transcript, 11/04/99, pp. 1313-16; Giardini Testimony, Transcript, 11/04/99, pp. 57-58.)
Associated, a company wholly owned by the same holding company that owns Maranba, was the only subcontractor to bid on the major demolition portion of the project. (Giardini Testimony, Transcript, 11/04/99, pp. 55-56.) Associated offered to perform the major demolition work for a lump sum of $175,000. (Plaintiff's Exhibit 6.) The Town accepted the bid at a meeting of the School Building Committee on April 4, 1994. (Plaintiff's Exhibit 7.) On April 18, 1994, Associated entered into a lump sum contract with Maranba to perform the work for $175,000.[2]
(Plaintiff's Exhibit 2.) Thomas Giardini, President of both Maranba and Associated, signed the contract on behalf of Maranba. (Id.) His father, Angelo Giardini, an officer of Associated, signed on behalf of Associated. (Id.)
The nearly completed elementary school opened in September, 1995 for the 1995-96 school year. (Panciera Testimony, Transcript, 11/04/99, pp. 16-17.) By November of 1995, Associated completed all of the required demolition work. (See Plaintiff's Exhibit 8; Panciera Testimony, Transcript, 11/04/99, p. 19; Giardini Testimony, Transcript, 11/04/99; pp. 62-64.) Maramba received from the town and paid Associated total payments of $172,500, minus $8625 as retainage, for the major demolition work. (Plaintiff's Exhibit 8; Defendant's Exhibits A and C; Giardini Testimony, Transcript, 11/04/99, pp. 62-64.) Associated also received an additional $101,699.29, minus $5084.96 as retainage, for performing minor demolition work. (Id.) According to Thomas Giardini, the minor demolition category consisted of demolition work that was unknown at the beginning of the project, and only became known as the project progressed to completion. (See Giardini Testimony, Transcript, 11/04/99, p. 73.) The minor demolition work was separate from the major demolition work called for in the contract between Associated and Maranba.
By November of 1995, the Town's relationship with Maranba had soured and it released Maranba as the construction manager. (Panciera Testimony, Transcript, 11/04/99, p. 17; Giardini Testimony, Transcript, 11/04/99, pp. 65-66; Anderson Testimony, Transcript, 11/10/99, pp. 113-14; Giardini Testimony, Transcript, 11/10/99, pp. 116-17; Panciera Testimony, Transcript, 11/10/99, pp. 121-122.) Although the Town thereafter directly paid subcontractors for their work, the School Building Committee refused to pay Maranba or Associated any additional funds, including Associated's retainages. (Panciera Testimony, Transcript, 11/04/99, p. 25; Panciera Testimony, Transcript, 11/10/99, p. 98.) CT Page 7318
Maranba initially was hopeful that the Town would allow it to complete the project and, hence, Maranba attempted to negotiate for its return. (Defendant's Exhibit D; Giardini Testimony, Transcript, 11/04/99, p. 70.) At some time between December, 1995 and August, 1996, however, Tom Giardini became concerned that the Town intended to pay neither Maranba nor Associated any additional funds for their already completed work. (Defendant's Exhibits B and D; Panciera Testimony, Transcript, 11/10/99, p. 98.) Therefore, in late August, Maranba sought mediation pursuant to its contract with the Town. (Plaintiff's Exhibit 1; Defendant's Exhibit D.)
In a letter addressed to the Town and the American Arbitration Association, dated August 21, 1996, John Rose, Jr., counsel for Maranba and Associated, wrote: "Maranba claims at least $171,967, before interest and any allowable charges and costs. Prior to the actual mediation session, we will submit a formal breakdown of the Maranba claim." (Defendant's Exhibit D.) Rose subsequently provided counsel for the Town with a detailed explanation of Maranba's claim in a letter dated October 23, 1996.[3] (Defendant's Exhibit B.) Maranba's total claim was in the amount of $171,596.69, of which $5084.96 was identified as retainage for minor demolition and another $8625 was identified as retainage for major demolition. (Id.) These items were performed by Associated. (Defendant's Exhibits B and C.)
According to the testimony of Tom Giardini, the claim letter was written because "we wanted to get paid." (Giardini Testimony, Transcript, 11/04/99, p. 70.) When asked to clarify his use of "we," Giardini responded: "Well, Maranba and also, since we're sister companies if you want to call it that, Associated who had not been paid their retention for final payments. So we thought it to be expeditious to — when we went in to discuss monies owed that we incorporate everything so we weren't going to walk out and then walk back in two seconds later to. . . ." (Giardini Testimony, Transcript, 11/04/99, pp. 71-72.)
The mediation took place on December 27, 1996. (Anderson Testimony, Transcript, 11/10/99, p. 110.) Thereafter, Rose forwarded a letter to the Town's counsel, dated January 2, 1997, in which he articulated his understanding of the mediation and settlement discussions. (Defendant's Exhibit E.) Accordingly, the settlement called for the Town to pay Maranba $100,000 as full payment for "all of Maranba's claims against the Town which were the subject of the mediation claim." (Id.) The settlement also required Maranba and the Town to "exchange releases with respect to all claims as between the parties arising out of the February 4, 1994 contract to renovate the Old Somers High School, except for the claim (in litigation) of Connecticut Carpentry Corporation (CV-96-0474460 S)." (Id.) On January 17 and 24, 2000, Maranba and the Town provided their CT Page 7319 respective general releases. (Plaintiff's Exhibits 4 and 5.)
Associated now seeks to recover from the Town $16,209.96, of which $13,709.96 represents allegedly unpaid retainages for major and minor demolition and the remaining $2500 represents the allegedly outstanding balance on the lump sum contract between Associated and Maranba. Associated argued at trial that the Town was unjustly enriched on account of the Town's failure to pay completely for its performance. The Town asserts, however, that Associated was fully paid for its services and that it is not liable to Associated pursuant to the terms of Maranba's general release.[4] Accordingly, this court must decide whether Associated's claims were part of the general release that the Maranba provided the Town and whether the Town was unjustly enriched because it failed to pay the full amount owed to Associated for work performed on the Town's behalf.
"Unjust enrichment applies wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract. . . . A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another. . . . With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is claimed, to examine the circumstances and the conduct of the parties and apply this standard." (Citations omitted; internal quotation marks omitted.) Meaney v. Connecticut Hospital Assn.,Inc., 250 Conn. 500, 511-12, 735 A.2d 813 (1999). To recover for unjust enrichment, the plaintiff must prove that he bestowed a benefit upon the defendant for which the defendant unjustly did not pay and the failure of payment was to the plaintiff's detriment. See Hartford Whaler's HockeyClub v. Uniroyal Goodrich Tire Co., 231 Conn. 276, 283, 649 A.2d 518
(1994).
 I
This court concludes that Associated has failed to prove that the Town unjustly did not pay the retainages for major and minor demolition. The evidence clearly demonstrates that Thomas Giardini, as President of Associated and Maranba, conducted business with the Town on behalf of each entity. (Panciera Testimony, Transcript, 11/04/99, pp. 28-33; Giardini Testimony, Transcript, 11/04/99, pp. 50-51; Giardini Testimony, Transcript, 11/10/00, pp. 6-7; 30.) This was equally clear to John Panciera, Chairman of the School Building Committee who primarily dealt with Giardini on behalf of the Town. (Panciera Testimony, Transcript, CT Page 7320 11/04/99, pp. 28-29.) Accordingly, Panciera considered the relationship between Maranba and Associated as "one and the same." (Panciera Testimony, Transcript, 11/04/99, p. 28.) Whenever Panciera dealt with Maranba, he dealt with Giardini. (Id.) Whenever he dealt with Associated, he also dealt with Giardini. (Panciera Testimony, Transcript, 11/04/99, pp. 28-29.)
Considering the manner in which Giardini was conducting business with the Town, it is not surprising that Associated's claims for the unpaid retainages were subsumed under Maranba's claim in the letter, dated October 23, 1996. (Defendant's Exhibit B.) The letter, which served as the basis for settlement discussions and mediation, explicitly included Associated's claims for unpaid retainages in the amount of $13,709.96. (Id.) In fact, Giardini testified that the letter was written in order to recover expeditiously the retainages that both Maranba and Associated had yet to receive. (Giardini Testimony, Transcript, 11/04/99, pp. 70-71.)
Giardini, as President of Maranba and Associated, had the authority to negotiate with the Town in regard to these claims and he clearly exercised such authority when Associated's retainage claims were included in the letter, dated October 23, 1996. Giardini made the tactical decision to intertwine the claims of both companies when he sought payment from the Town. Giardini and the Town, with their respective counsel, arrived at a negotiated settlement in accordance with Giardini's strategy. (Defendant's Exhibits E and F; Plaintiff's Exhibits 4 and 5; Giardini Testimony, Transcript, 11/10/99, p. 15; Panciera Testimony, Transcript, 11/10/99, pp. 85-86.) Thereafter, Giardini accepted a check from the Town in the amount of $100,000 as full payment for all of Maranba's claims, including Associated's claims for the unpaid retainages.[5] In short, the evidence supports the Town's understanding that Associated's retainage claims were included in the settlement between Maranba and the Town.
Although Giardini, as President of Associated, may want to caste the settlement with the Town in a different light, Associated's retainage claims were not removed from the negotiating table merely because Giardini failed to recover the full demand of $171,596.96. The court notes that the settlement was made "between sophisticated commercial parties with relatively equal bargaining power." Tallmadge Bros., Inc. v.Iroquois Gas Transmission System, L.P., 252 Conn. 479, 496, 746 A.2d 1277
(2000). Under these circumstances, "[c]ourts do not unmake bargains unwisely made. Absent other infirmities, bargains moved on calculated considerations, and whether provident or improvident, are entitled nevertheless to sanctions of the law. . . . Although parties might prefer to have the court decide the plain effect of their contract contrary to the agreement, it is not within its power to make a new and differentCT Page 7321agreement; contracts voluntarily and fairly made should be held valid andenforced in the courts." (Internal quotation marks omitted.) TallmadgeBros., Inc. v. Iroquois Gas Transmission System, L.P., supra,252 Conn. 505-506. For all of the above reasons, Associated has failed to prove its claim of unjust enrichment against the Town in so far as it attempts to recover retainages for major and minor demolition work. These claims were merged into Maranba's claim and thus became part of the mediation and subsequent settlement.
 II
Associated has amply proven, however, that it completed the major demolition work and that the Town unjustly did not pay the remaining $2500 on the lump sum contract. The evidence clearly demonstrates that Associated fully performed the major demolition work by November, 1995; (Panciera Testimony, Transcript, 11/04/99, p. 19; Transcript, 11/10/99, p. 107; Giardini Testimony, Transcript, 11/04/99, pp. 63-64); and the Town has yet to pay the outstanding $2500 on the contract. (Panciera Testimony, Transcript, 11/04/99, p. 98.) There is no evidence in the record that this claim was subject to the previously discussed mediation and subsequent settlement between Maranba and the Town. In fact, the Town concedes that Associated never demanded the $2500 before trial. Furthermore, whether Associated billed the Town for the remaining $2500 is immaterial in light of the Town's decision, after discharging Maranba, not to pay any additional funds to either Maranba or Associated. (Id.)
The lump sum contract between Associated and Maranba required Maranba, after receiving the funds from the Town, to pay Associated en toto $175,000 for its fully performed work. The Town paid neither Maranba nor Associated the full amount. Therefore, the plaintiff is entitled to the outstanding balance of $2500 on the lump sum contract.
In consideration of the circumstances and the conduct of the parties, this court concludes that the Town was unjustly enriched in the amount of $2500. Accordingly, the court hereby orders that judgment enter in favor of Associated in the amount of $2500.
Peck, J.