[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM
This civil case was tried to the court in one day. Both parties were represented by counsel who presented witnesses and documentary evidence.
The plaintiff is a multiline representative who sells promotional products for six different manufacturers in a large geographical area encompassing several states. The defendant is an experienced representative in the field of promotional products. By written letter agreement dated March 29, 2000 the plaintiff retained the defendant as a sales representative for the purpose of selling products marketed by the plaintiff in New York City and in New Jersey. By written agreement dated October 1, 2000 the parties agreed to modify their agreement to increase the defendant's territory to include several more states, to increase her draw from $3,000 per month to $4,000 per month, and to increase her share of the commissions from 50% to 60%.
On March 7, 2001 the defendant called the plaintiff to ask if her $4,000 draw for March had been direct deposited to her account yet. She had never made such a call before. She was assured that the $4,000 had been deposited already. On March 9, 2001 the defendant terminated her agreement with the plaintiff by FAX. The plaintiff commenced this suit against the plaintiff to recover the sum of $22,099.27. This represents the difference between the total amount of the defendant's draw and the total amount of the defendant's commissions paid at the time of her termination. It does not include her commissions which were received after her termination.
In the first count of his complaint the plaintiff claims that the defendant breached her contract with the plaintiff by failing to return the $22,099.27 in excess draw. "Connecticut has adopted the majority rule that, where advances made to a salesman are charged against commissions earned, he is not required to pay any excess of advances over commissions unless it is expressly or impliedly agreed that he do so." ValocoBuilding Products Inc. v. Chafee, 4 Conn. Cir.Ct. 323 (1966); Sutton v.CT Page 2790-alAvery, 132 Conn. 397, 399 (1945). The agreement is silent as to whether the defendant is required to pay back excess advances. Accordingly, the plaintiff is not entitled to recover the excess advances.
The second count of the complaint sets forth a cause of action for conversion and statutory theft under C.G.S. Section 52-564. Conversion requires proof of an unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights. Falker v. Samperi, 190 Conn. 412, 419 (1983). But, based upon the clear Connecticut precedent established in the Valoco and Sutton cases, defendant was entitled to retain the draw received during the time that the contract was in existence. Therefore, there can be no conversion found with respect to the draws received before the contract was terminated.
But the plaintiff claims that the alleged conversion of the $4,000 draw for the month of March 2001 needs to be examined separately. In her answer to the plaintiff's complaint the defendant admitted that she made no sales calls nor performed any services for the plaintiff during March 2001. At trial the defendant's work log showed two sales calls on March 8, 2001. At the conclusion of the trial the defendant moved to amend her answer to conform to the evidence. The court reserved judgment on that motion. Practice Book Section 10-62 permits amendments to conform to the proof at any stage of the trial. The plaintiff will not be prejudiced by this amendment. Therefore, the amendment is granted. However, it avails the plaintiff nothing. First, although the original answer is no longer usable as a conclusive judicial admission, it is still usable as an evidentiary admission. Schenck v. Pelkey, 176 Conn. 245, 248 (1978). Second, it is not credible that the defendant actually made two meaningful sales calls on March 8, 2001. It is clear that even if there were two sales calls on March 8, 2001, it was "window dressing" designed to justify the receipt of the $4,000 advancement for March. The defendant had made no sales calls in March before she called the plaintiff on March 7, 2001 to be sure that her advancement had been wired. She had never ca]led about her draw before. It is clear that the defendant already knew on March 7, 2001 that she was going to resign. She should have resigned on March 7, 2001 and should have returned the $4,000 that had been advanced for March 2001. The defendant is not entitled to retain the $4,000 draw for March, a month for which the parties were not bound by the contract. This receipt and retaining of the $4,000 draw for March amounts to a conversion of the funds.
The defendant also claims treble damages for the conversion of the $4,000 under General Statutes Section 52-564 entitled "Treble Damages for Theft." That section provides: "Any person who steals any property of CT Page 2790-am another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages." Statutory theft under this section is synonymous with larceny under Section 52-564 of the General Statutes and requires proof that 1) the property held by the defendant belonged to the plaintiff, 2) the defendant intentionally deprived the plaintiff of the property, 3) the defendant's conduct was unauthorized. See, DiscoverLeasing, Inc. v. Murphy, 33 Conn. App. 303, 309 (1993). "Conversion can be distinguished from statutory theft as established by Section 53a-119
in two ways. First, statutory theft requires an intent to deprive another of his property; second, conversion requires the owner to be harmed by the defendant's conduct. Therefore, statutory theft requires a plaintiff to prove the additional element of intent over and above what he or she must demonstrate to prove conversion." Lawson v. Whitney's Frame Shop,42 Conn. App. 599, 605-06 (1996), rev'd on other grounds, 241 Conn. 678
(1997). "In addition, a plaintiff must satisfy a higher standard of proof, namely, clear and convincing evidence, in order for the trial court to award treble damages pursuant to Section 52-564 while it is ordinarily sufficient in civil cases to prove the existence of a criminal act by a preponderance of the evidence." (Interior quotation marks and citations omitted.) Id. at note 8.
The court finds, by clear and convincing evidence, that when the defendant called the plaintiff on March 7, 2001 to inquire about her March draw, she intended to accept the $4,000 draw for the month and then resign without doing any meaningful work or incurring any expenses in furtherance of the plaintiff's business. The evidence was sufficient to establish a statutory theft in that 1) the $4,000 received by the defendant belonged to the plaintiff, 2) the defendant intentionally deprived the plaintiff of his funds, and 3) the defendant's conduct was unauthorized. See, Suarez-Negrete v. Trotta, 47 Conn. App. 517, 521-22
(1998). Therefore, the plaintiff is entitled to treble damages.
The plaintiff has claimed statutory interest pursuant to C.G.S. 37-3a. This section authorizes the discretionary award of interest at 10% per annum on money wrongfully withheld from the owner. Accordingly, the court will award interest of 10% from March 7, 2001 until the date of judgment. This is calculated to be $784.66. As the Suarez-Negrete case makes clear, the interest is added to damages before being trebled. Id.
at 522-23. Therefore, the damages for statutory theft will be calculated by trebling $4784.66. This results in a total award of $14,353.98.
The plaintiff claims in the third count that the defendant breached her contract by failing to do at least 20 calls per week and by failing to service her entire geographical area. It is undisputed that the defendant never made any calls in several of the states included within her CT Page 2790-an territory. However, there is no language in the agreement which obligated the defendant to visit each state within a certain period. The defendant did not breach the agreement in this respect. With regard to the number of sales calls per week the agreement provides that: "Assuming that there is not a trade show, vacation, etc. Galen Goldman is responsible for making a minimum of twenty (20) sales calls per week." It is undisputed that the defendant always made less than 20 sales calls per week. She explained that she was focusing on making "quality" calls rather than a fixed "quantity" of calls. The failure to make these calls constituted a breach of the agreement between the parties. If the defendant had a philosophical disagreement about the effectiveness of making 20 calls per week she never should have signed the agreement.
However, the plaintiff has failed to prove his damages for breach of contract. The measure of damages for breach of contract is designed to place the injured party, so far as can be done by money, in the same position as that which he would have been in had the contract been performed. Beckman v. Gaelic Homes, Inc., 190 Conn. 299, 309 (1983). In this case the plaintiff never proved, by a fair preponderance of the evidence, the amount of commissions which the plaintiff would have earned if the defendant had made a minimum of 20 sales calls per week as called for by the contract. Furthermore, the defendant would have been entitled to credit for the commissions received after her termination on sales she made before she left. Evidence of these commissions was not offered.
In the fourth count of the complaint the plaintiff sets forth a cause of action for unjust enrichment on the grounds that by failing to make at least 20 sales calls per week the plaintiff has been paid more than she is entitled to have received. This claim must be rejected. Unjust enrichment is not applicable to these facts because this equitable remedy applies only when "justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract." Hartford Whalers Hockey Club v. UniroyalGoodrich Tire Co., 231 Conn. 276, 282 (1994). "The fact that the plaintiff could not recover under the contract does not bar its recovery under the theory of unjust enrichment; indeed, lack of a remedy under the contract is a precondition for recovery based upon unjust enrichment."Id. at 284. In this case the plaintiff had a remedy available under the contract. He proved a breach of contract but he failed to establish his damages. He is not entitled to recover in unjust enrichment where a contractual remedy was available.
For the reasons cited in this opinion judgment enters for the plaintiff in the amount of $14,353.98 plus costs. CT Page 2790-ao